## Commonwealth ex rel. Coleman *v.* Coleman, Appellant.

Argued April 12, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Clyde P. Bailey,* with him *William J. Graham* and *Weller, Wicks & Wallace,* for appellant.

*Elliott W. Finkel,* with him *Kaplan, Finkel & Roth,* for appellee.

OPINION BY WATKINS, J., June 11, 1957:

This is an appeal from an order of the County Court of Allegheny County, entered against the appellant, for the support of his wife in the sum of $80 per month. The proceedings were instituted under the Uniform Support Law by the filing of an information, made by the wife in Dade County, Florida.

This is the second marriage for both parties, the wife having been divorced six months prior to the present marriage and the husband having lost his wife in death, after 38 years of marriage. He has two sons by his first marriage. The wife is 48 years of age and the husband 67. She was a resident of Miami, Florida where she owns a home. He has lived his entire life

in Pittsburgh where he owns extensive, valuable real estate and conducts a real estate business.

They were married November 5, 1952 and the husband provided an apartment in Pittsburgh where they made their residence. They also lived together at her home in Miami, Florida. Because of his business in Pittsburgh and because of their disagreements, they lived together in Pittsburgh and Miami only about 4 months from the date of marriage until April 19, 1953. April 19, 1953 was the last day the complainant fixed in her information that she lived with her husband.

There is evidence of trouble between the parties almost from the beginning of this marriage and although the testimony is conflicting they both agree that the causes of their trouble has been money and her desire to live in Florida and his desire to live in Pittsburgh.

The record shows that prior to their marriage a statement had been made to the wife by the husband of his ownership of real estate valued at $300,000 and she admits that her security, based on this information, was one of the reasons that induced her to make the marriage. Sometime after he left her home in Florida which she fixed as April 19, 1953 she left for Pittsburgh, as she stated, to investigate him as she had heard he had transferred his real estate to his son. She admits that he wanted her to return to him in Pittsburgh as indicated by telephone conversations. She also stated that her trip to Pittsburgh in April when the investigation was made, was for the purpose of arranging a reconciliation. By her investigation she discovered he had, a short time before marriage, transferred certain of his real estate to his son. This was the state of the record until May 14, 1953. As of that time, it was difficult to establish a course of conduct from the very general nature of the testimony and because the time the parties actually lived together was

so short and sporadic. But we would agree with the court below, giving full credibility to her testimony, that the complainant had just cause to leave her husband; that she was entitled to support, and that the evidence was sufficient to sustain her burden to prove such just cause.

The complainant, after her investigation disclosed the transfer of the property, prior to the marriage, consulted lawyers in Pittsburgh and then told her husband she would not go back and live with him unless he put those properties back into his name. On May 14, 1953, with both parties represented by counsel, in her lawyer's office, a post-nuptial agreement was executed by them. This provided for the re-transfer to the husband by his son of all the husband's real estate that he had transferred on October 28, 1952. He also gave up by this agreement any interest he might have in her estate, by reason of the marriage, present and future, and she specifically retained all her interest in his estate, by reason of the marriage, present and future. The deeds were executed at the same time as the agreement. She admits that there was an oral agreement by her to return to her husband and resume the marital status if the post-nuptial agreement was executed. The reconciliation was completed in the lawyer's office and she and her husband left for the purpose of having lunch together and so far as the record shows, to resume the marital relationship. While having lunch, she asked her husband, according to the defendant, to put $2,000 in cash in her name and according to the complainant she asked for several hundred dollars. She made this agreement a condition for her living with him and when he said he did not have the money she left him permanently and this action is the result. It is not denied that the husband held the apartment open for her and, subsequent to May 14, 1953, requested her to return.

The basic question in this case is whether the wife left the marital abode for good cause. As stated by Judge GUNTHER in *Com. v. Cooper*, 183 Pa. Superior Ct. 36, page 38, 128 A. 2d 181 (1956), "Our duty is to determine whether there is sufficient evidence to sustain the order of the hearing judge. Commonwealth ex rel. Lipschultz v. Lipschultz, 179 Pa. Superior 527, 117 A. 2d 793. In cases such as this, the only legal cause which would justify a refusal by the husband to support his wife is conduct of the wife which would support valid grounds for divorce. Commonwealth v. Sgarlat, 180 Pa. Superior 638, 121 A. 2d 883; Commonwealth ex rel. DePietro v. DiPietro, 175 Pa. Superior 18, 1-2 A. 2d 192. Conversely, where a wife voluntarily leaves her husband, the burden is upon her to establish justification for leaving or that the husband consented to the separation: Commonwealth v. Sgarlat, supra; Commonwealth ex rel. Pinkenson v. Pinkenson, 162 Pa. Superior 227, 57 A. 2d 720; Commonwealth ex rel. Van Wagenen v. Van Wagenen, 167 Pa. Superior 354, 74 A. 2d 740. However, the wife need not establish facts which would entitle her to a divorce but only facts which would justify her living apart from her husband."

We think the facts in this case add up to a willful and malicious desertion of the husband by the wife on May 14, 1953. Any complaint that the wife had as to the conduct of her husband prior to the signing of the post-nuptial agreement had no bearing upon her desertion, her only reason for leaving then, according to the complainant's own testimony, is that he did not give her cash. "A voluntary withdrawal of the wife from her husband without adequate legal reason would, therefore, defeat her right to support because a willful and malicious desertion will be presumed." *Com. ex rel. v. Udis*, 174 Pa. Superior Ct. 624, 626, 101 A. 2d 144 (1953).

In *Com. v. Sgarlat*, 180 Pa. Superior Ct. 638, at page 641, 121 A. 2d 883 (1956), the wife's right to support where she had withdrawn from her husband's home was stated by this Court as follows: "To be entitled to support, where a wife withdraws from the marital domicile, the burden is upon her to establish that her husband's conduct justified her leaving him or that he consented to the separation; and of course a voluntary withdrawal by the wife without adequate legal reason defeats her right to support."

On May 14, 1953 the reconciliation which she said she came to Pittsburgh to secure took place, evidenced in writing by the post-nuptial agreement. This reconciliation amounted to a forgiveness of past grievances by both parties, evidenced by the re-conveyance of the properties and her oral promise to return to her husband. We feel that the court below made its order based on the testimony of the occurrences prior to May 14, 1953 and overlooked the importance of the reconciliation of May 14, 1953. We are, therefore, constrained to disturb the determination by the court below that the prosecutrix had adequate legal reason for leaving her husband. For what other reason would the husband have executed the agreement and the deeds to place the real estate in his name? This indicates his great desire to have his wife back, a desire so great that he was willing to take valuable assets from his own son and give them to her. He was justified in assuming that she had returned to him when they left the lawyer's office together in fulfillment of her promise. He was justified too in refusing the money because from the post-nuptial experience he could not be sure she would keep her promise even after she was given additional cash. Certainly the refusal to give her cash, after having just acceded to her demands for the real estate, was not itself sufficient legal reason for her desertion.

The appellant's case does not rest upon the issue of credibility determined from all the testimony in this case but the admitted facts establish that the complainant willfully and maliciously deserted her husband and that she had no adequate reason in law for leaving him.

The order of the court below is reversed.