Commonwealth ex rel. Halderman, Appellant, *v.*
Halderman.

Argued March 27, 1974.   Before WATKINS, P. J.,
JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and
SPAETH, JJ.

*S. Richard Klinges, III*, with him *Begley, Carlin, Mandio, Kelton & Popkin*, for appellant.

*David A. Clarke*, for appellee.

OPINION BY PRICE, J., September 23, 1974:

This is an appeal arising from a nonsupport proceeding commenced by appellant-wife seeking support for herself and her two minor children.[1] On March 3, 1973, following a period of marital difficulties and two prior separations, the appellant left the common domicile of the parties and took her two sons with her.[2] Appellant's stated reason for leaving was that appellee-husband was physically abusing the seventeen year old son, Charles.

Appellee refused to pay anything for the support of his wife. However, he did pay certain items charged to accounts by appellant before and after the separation, and in July, 1973, commenced payment of $20.00 a week for the support of the thirteen year old son, Bruce.

Following a support conference before a probation officer of the Bucks County Domestic Relations Divi-

---

[1] Action brought pursuant to the Act of June 24, 1939, P. L. 872, §733, as amended (18 P.S. §4733).

[2] A third child, aged 20 years, has brain damage, and resides at the Pennhurst State School and Hospital.

sion during which the parties were unable to reach a mutually satisfactory agreement, a support hearing was held on August 30, 1973. After a lengthy hearing, in which the only testimony was that of the parties, the court dismissed appellant's petition for support but entered an order for the son, Bruce, in the amount of $40.00 per week, and, in addition, directed appellee to pay the $1,400.00 balance due for orthodontist's services for Bruce. The claim for support for the elder son, Charles, was withdrawn because he had attained the age of 18 subsequent to the filing of the support petition.

In her appeal, appellant alleges error in the court's findings that she was not entitled to support and error in the amount of support set for Bruce. Appellant contends that the evidence presented at the hearing of August 30, 1973, was sufficient to legally justify her separation from her husband and establish her entitlement to support.

Axiomatically, in support proceedings, it is the function of this court to determine whether there is sufficient evidence to sustain the court below or whether the court below was guilty of an abuse of discretion. *Commonwealth ex rel. De Cristofano v. De Cristofano*, 193 Pa. Superior Ct. 574, 165 A. 2d 105 (1960); *Commonwealth ex rel. Udis v. Udis*, 174 Pa. Superior Ct. 624, 101 A. 2d 144 (1953). A finding of an abuse of discretion is not lightly made and is determined only upon the showing of clear and convincing evidence that would require reversal of the lower court. See, e.g., *Crissman v. Crissman*, 220 Pa. Superior Ct. 387, 281 A. 2d 719 (1971) (in reversing the lower court, held that immoral advances by husband towards wife's son by another marriage was legal justification for separation); *Commonwealth ex rel. Lipschultz v. Lipschultz*, 179 Pa. Superior Ct. 527, 117 A. 2d 793 (1955) (mere allegation by wife that cohabitation was unbearable, un-

supported by facts or reason, was not sufficient to support lower court's grant of support) ; *Commonwealtth ex rel. Brown v. Brown,* 195 Pa. Superior Ct. 324, 171 A. 2d 833 (1961) (holding by the lower court, that the inability of husband and wife to agree on financial matters was, of itself, a valid reason for separation, was reversed.)

In the instant appeal, after reviewing the record, we find the evidence insufficient to sustain the order of the court below, and, therefore, agree with appellant's contentions as to her petition for support and remand to the lower court for the entry of an appropriate order. However, we find the $40.00 per week order in favor of Bruce to be adequate, and so affirm that order.

The law governing the burden of proof in an action for support and maintenance following a nonconsensual, voluntary withdrawal of the wife from the common abode, is well settled. In such an instance, it is not necessary for the wife to present grounds for leaving her husband which would entitle her to divorce in order to procure an order of support. *Commonwealth ex rel. O'Gara v. O'Gara,* 198 Pa. Superior Ct. 405, 181 A. 2d 723 (1962) ; *Commonwealth ex rel. De Cristofano v. De Cristofano, supra.* The wife need only show by sufficient evidence a reasonable cause that would justify her voluntary withdrawal from the common domicile. *Commonwealth ex rel. Young v. Young,* 207 Pa. Superior Ct. 440, 217 A. 2d 857 (1966) ; *Commonwealth ex rel. DiPietro v. DiPietro,* 175 Pa. Superior Ct. 18, 102 A. 2d 192 (1954).

As to the husband, the only reasonable cause justifying his refusal to support his wife is conduct on her part which would be a valid ground for a decree in divorce. *Commonwealth ex rel. Pinkenson v. Pinkenson,* 162 Pa. Superior Ct. 227, 57 A. 2d 720 (1948). Thus, a wife's failure to live with the husband does not justify the husband's refusal to support the wife unless the

separation is willful and malicious and without consent or encouragement. *Commonwealth ex rel. DiPietro v. DiPietro, supra.*

These precedents are based on the policy "that where there are reasonable legal grounds justifying a wife's decision to separate from her husband, although possibly falling short of the minimum ground for obtaining a divorce, the husband should be required to support her where he is able to do so, lest she become a charge upon society in general." *Commonwealth ex rel. Darges v. Darges,* 202 Pa. Superior Ct. 330, 333, 195 A.2d 847, 849 (1963) (quoting lower court opinion).

Appellant testified that she separated from her husband primarily because of his conduct toward the children. She further testified that she had separated from her husband on two other occasions because of his "beating and being mean to the children," and that on "many, many occasions" the husband would "get [Charles] on the floor, sit on him and pound him on the back and on the head."[3] Appellant also specifically described two such instances when appellee used what clearly amounts to the excessive use of physical force in dealing with the children, one of which immediately precipitated the parties' final separation.[4]

---

[3] As to the relationship between the appellee and his son, Charles, appellant testified that: "Q. Do you know anything about the relationship between your son Charles and your husband now? A. I imagine they have a very good relationship. I told the boy right along that if we left, that he and his father would get along. Q. You feel that if the two didn't live together they get along better? A. Very well, right." (NT 33)

[4] Appellant, in relating the incident which led to the final separation on March 3, 1973, testified on redirect examination: "A. Well, the night that we left he got him down on the floor and beat him and choked him so bad. Q. Who? A. Charles, Jr. Q. Did what? A. The boy wanted another glass of milk, and his father told him he couldn't have any more. This is usually what it was always over, always at the dinner table. It was always over the boy having more

Appellee, in his testimony, did not refute his wife's testimony, but in fact corroborates it.[5] He does not contradict her testimony as to the details of the two instances of beatings of the sons, although he does characterize his actions as constituting discipline of the children.[6] Appellee, throughout his testimony, contended

---

food. Q. What did he do to the boy? A. He got him down and he choked him very badly and beat him, broke his eye all open. Q. On the floor? A. Right, on the floor, sit on him and pound him on the back and on the head. I have one retarded child, and I don't want another one." (NT 33)

Appellant also testified on redirect examination to another incident: "Q. Now, going to an incident in October of '72, there was a striking of Bruce? A. Right. . . . A. Well, the night that Bruce got the beating and the choking, he was being very silly. So his father took him and turned him over his knee and beat him real hard and spanked him and choked him. Q. And choked him? A. Yes. Q. He actually put his hands on the boy's throat? A. Yes. Q. Were there any marks on the boy's throat? A. Yes, there were. Q. Did the boy lose any coloration in his face at the time of the choking? . . . A. That I don't know." (NT 34)

[5] Appellee testified that appellant separated from him because of sexual incompatibility and his "German temper with the children." (NT 42) Appellee also testified to two attempts at reconciliation with his wife. She in turn testified on direct examination that: "We had been separated before and we have been to marriage counselors. We have been to the Bucks County Psychiatric Center. There is just no way it will work." (NT 14)

[6] In response to appellant's allegations of brutality to the children, appellee testified on direct examination: "Q. Let's start with March of 1973. You heard your wife testify to the fact that you were beating and choking your son Charles and that is why she left. Would you tell his Honor what happened on that occasion? A. Your Honor, on that occasion Chucky and I seemed to have a problem where he was going to run me. I don't think a boy 17 is going to run his father. We ended up at the table. We usually have the arguments at the table. Why they start there, I can't tell you. But I told him to keep quiet. His mother told him to keep quiet. He didn't. As you know, one word brings on another. With that, I jumped up and I pounced on him. When she said I choked him, he was down on the floor trying to keep away from my fist. So I got ahold of him by the neck and lifted him up so

that the differences between the parties amounted to only disagreements as to the disciplining of the children. He also contended that the two instances of brutality cited by the wife were mere isolated instances over a five month period. However, at no time did he refute her testimony that the incident occurring on March 3, 1973, was one of many similar incidents. On the contrary, he admitted that he had been using his fists on Charles since at least August, 1972.

"In an action for divorce, where the burden of proof is much greater than in the instant case, mistreatment of a spouse's child has been held to constitute indignities directed to the person of the parent and thus may support a divorce decree." 220 Pa. Superior Ct. at 389, 281 A. 2d at 721 (husband attempted sexual molestation of wife's child). See also Annot., *Mistreatment of Children as Grounds for Divorce*, 82 A.L.R. 2d 1361 (1962) ; 2 Freedman, *Law of Marriage and Divorce in Pennsylvania*, §338 (2d ed. 1957). Action by a

---

I could hit him. That is the truth. With that, she said, 'We are leaving,' and she left. . . . Q. Now, your wife has testified to the fact that you beat the children and you have just recited to the Court this occasion with your son Charles. Now, you say you grabbed him by the throat? A. Yes. When he was down on the floor trying to get away from my fists, I grabbed him there to bring him up so I could hit him again. Q. And did you hit him again? A. I doubt it. Q. She also testified that in October of 1972 there was a striking by you of Bruce. A. Bruce was struck by the hand on the back, right where he needed it. Q. She said you spanked him and you choked him. A. That is not true. I never choked the boy at all. Q. You never choked Bruce? A. No. Q. Did you ever choke Chuck? A. No, not other than what I just told you. Q. Why were you spanking Bruce on this occasion in October of 1972? A. I wouldn't know, sir, at this time. Bruce is a very hard boy to control. His mother has had control of him and she interferes every time there is any discipline being brought up. The children were in such a quandry that they never knew who to listen to." (NT 39)

spouse amounting to excessive physical abuse, by beating or whipping a child, has been held sufficient to constitute indignities that would support an action for divorce. *Walker v. Walker,* 109 Pa. Superior Ct. 539, 167 A. 446 (1933).[7] *Cf. Commonwealth v. Sgarlat,* 180 Pa. Superior Ct. 638, 121 A. 2d 883 (1956); *Commonwealth ex rel. Berry v. Berry,* 165 Pa. Superior Ct. 598, 69 A. 2d 442 (1949).

We are convinced, after reviewing the evidence, that appellant has clearly met the required burden by demonstrating sufficient evidence of numerous incidents of excessive physical force by the husband toward the children, and has demonstrated an adequate reason at law to justify appellant's voluntary withdrawal and right to receive support from appellee.

Appellant also contends that the $40.00 per week support order and responsibility for the $1,400 orthodontist's bill for Bruce was unreasonably low and not supported by sufficient evidence in light of appellee's financial circumstances.[8] At the time of the preliminary support conference, appellee's net weekly income was $199.99. Between the date of the conference and the time of the hearing, appellee testified that his gross income had been increased by $10.00 per week. He also testified to a reduction of debts during that period

---

[7] In *Walker,* a husband was granted a divorce from his wife on the grounds of indignities consisting of mistreatment of the husband's children. The wife argued that her acts of slapping, kicking, choking and subjecting the minor child to verbal abuse were necessary for discipline; however, the court found that her actions were without reasonable justification.

[8] The $40.00 order was recommended by the domestic relations office, and counsel for appellant indicated a partial concurrence in the recommendation with the qualification that he concurred only insofar as it was one part of a two part recommendation to be considered in the event that the court should find that the wife was entitled to an award for her own support.

of time, from $4,497.46 to $3,631.66.[9] The joint real estate was valued at $48,000.00, with a mortgage balance of $13,871.53.

Appellant testified to weekly expenses of $168.23; however, she did not testify as to the individual cost of supporting Bruce. She receives $50.00 per week in welfare, without food stamps, and $10.00 per week from both the son, Charles, and a nephew for room and board.

The amount of a support order must be justified by the parent's present earning ability and will not be interfered with by the court unless the amount awarded for support is grossly inadequate or excessive. *Commonwealth ex rel. Goodman v. Delara*, 219 Pa. Superior Ct. 449, 281 A. 2d 751 (1971); *Commonwealth ex rel. Jacobson v. Jacobson*, 188 Pa. Superior Ct. 433, 146 A. 2d 91 (1958).

We are of the opinion that the order entered by the court below was not unreasonable in view of the record before us and that $40.00 per week for the support of one child is adequate.

That portion of the order of the lower court denying the appellant support is vacated, and the record is remanded for a determination of what amount of support appellant should receive. That portion of the order of the lower court awarding $40.00 per week support and payment of $1,400.00 for orthodontic fees for son Bruce, is affirmed.

---

[9] Appellant complained that she was not permitted to question appellee concerning certain previously held assets. Appellee had testified that he sold a camper about March 16, 1973, and that he no longer had the proceeds at the date of hearing. The trial judge sustained appellee's objection to questions as to the amount and disposition of the proceeds on the ground of relevancy. The support order must be based on the husband's property and income at the time of the hearing, not on what they may have been at an earlier date. *Commonwealth ex rel. Jacobson v. Jacobson*, 181 Pa. Superior Ct. 369, 124 A. 2d 462 (1956); *Commonwealth ex rel. Schofield v. Schofield*, 173 Pa. Superior Ct. 631, 98 A. 2d 437 (1953).