Commonwealth ex rel. Loosley, Appellant, *v.* Loosley.

Argued June 10, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Joseph P. Mylotte*, with him *Ackerman & Mylotte*, for appellant.

*Louis S. Cali*, for appellee.

OPINION BY VAN DER VOORT, J., September 22, 1975:

Appeal is taken to this Court from an Order of Judge Domenic D. JEROME denying appellant's petition for support. The question for our consideration is whether the lower court abused its discretion in denying support to appellee's spouse, there having been no divorce and appellant having left the abode of her husband.

Our appellate review of the record will extend only to a determination of whether there is sufficient evidence to sustain the Order entered. "It has been repeatedly stated that, in a support proceeding, we will not interfere with the determination of the lower court unless there has been a clear abuse of discretion." *Commonwealth ex rel. McCuff v. McCuff*, 196 Pa. Superior Ct. 320, 324, 175 A.2d 124, 126 (1961). Such a finding by our Court will not be made lightly, but only upon clear and convincing evidence. *Commonwealth ex rel. Halderman v. Halder-*

*man,* 230 Pa. Superior Ct. 125, 326 A.2d 908 (1974). In order to determine whether there exists such clear and convincing evidence to overturn an order against a spouse who has left the abode, we are guided by *Halderman, supra,* at 128:

> "The law governing the burden of proof in an action for support and maintenance following a non-consensual, voluntary withdrawal of the wife from the common abode, is well settled. In such an instance, it is not necessary for the wife to present grounds for leaving her husband which would entitle her to divorce in order to procure an order of support. (Citations omitted). The wife need only show by sufficient evidence a reasonable cause that would justify her voluntary withdrawal from the common domicile."

Without such reasonable grounds, the spouse who leaves is not entitled to support from the other spouse, whose argument by way of defense is that the departing spouse's conduct would amount to valid grounds for divorce. See *Commonwealth ex rel. Bergwerk v. Bergwerk,* 228 Pa. Superior Ct. 190, 323 A.2d 243 (1974) and *Commonwealth ex rel. Keeth v. Keeth,* 223 Pa. Superior Ct. 96, 289 A.2d 732 (1972).

Uncontradicted testimony indicates that appellant and appellee exchanged bitter words in fits of anger, and that appellee was quite often angry at his wife's dependence upon her family. Appellee knew that appellant was under treatment for a psychiatric disorder and that his conduct, such as moving to another bedroom for sleeping, made her quite nervous. Appellee on numerous occasions informed his wife that he wanted a divorce. There is testimony that appellee in some degree struck appellant's upper arm, a bruise having resulted.

Based upon our reading of the testimony, we conclude that appellant met her burden of proving that her home life was sufficiently difficult as to justify her with-

drawing from the common abode. This is especially so in light of appellee's knowledge of his wife's psychiatric problem and the lack of his testimony that her conduct in relation to his actions was independent of her mental and emotional instability. See *Boggs v. Boggs,* 221 Pa. Superior Ct. 22, 289 A.2d 479 (1972).[1] We cannot conclude that appellant's leaving was consensual as appellee has denied ever encouraging his wife's withdrawal. Nor can we surmise that appellee has presented a case showing that appellant's conduct has established for him adequate grounds for divorce, testimony hereon not being present. We therefore hold that appellant has proved reasonable grounds for separating from her husband and that she is entitled to support. See *Commonwealth ex rel. Thompson v. Thompson,* 220 Pa. Superior Ct. 400, 289 A.2d 183 (1972). The lower court has abused its discretion by failing to address itself to the quantum of proof of reasonable grounds to withdraw presented by appellant, and to the lack of appellee's testimony by way of defense.

Order reversed, and the case is remanded to the lower court with an order for it to proceed in accordance with this opinion and to determine a just and equitable amount of support entitlement for appellant.

SPAETH, J., concurs in the result.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellant contends that the lower court abused its discretion in dismissing her petition for support.

In July, 1974, appellant-wife left the apartment where she and appellee had been living. Thereafter, she filed a petition in the Court of Common Pleas of Delaware County for payment of support. On August 28, 1974,

---

1. This case was before us again in 222 Pa. Superior Ct. 209, 294 A.2d 925 (1972).

Judge JEROME held a hearing and ruled that appellee was not liable for support because appellant, who voluntarily left appellee, failed to prove legal grounds justifying the separation.

I agree with the Majority's statement that we may not reverse the lower court's order unless the record shows a clear abuse of discretion. *Commonwealth ex rel. Halderman v. Halderman,* 230 Pa. Superior Ct. 125, 326 A.2d 908 (1974) ; *Commonwealth ex rel. De Cristofano v. De Cristofano,* 193 Pa. Superior Ct. 574, 165 A.2d 105 (1960). Further, I agree that "[a] finding of an abuse of discretion is not lightly made and is determined only upon the showing of clear and convincing evidence that would require reversal of the lower court." *Halderman,* supra at 127, 326 A.2d at 910. In addition, "[a] wife's voluntary withdrawal from her husband without adequate legal reason defeats her right to an order for support." 18 P.L.E., Husband and Wife, §123; see also, *Commonwealth ex rel. Miller v. Miller,* 209 Pa. Superior Ct. 196, 223 A.2d 917 (1966) ; *Commonwealth v. Sgarlat,* 180 Pa. Superior Ct. 638, 121 A.2d 883 (1956). Finally, this Court must be mindful of our limited scope of review where the resolution of the issue at trial turns on credibility of the witnesses: "In a support proceeding, the trial judge who sees and hears the witnesses is in a better position than the Superior Court to decide the issue on its merits." *Commonwealth ex rel. Friedman v. Friedman,* 223 Pa. Superior Ct. 66, 67, 297 A.2d 158, 159 (1972). Cf. *Gehris v. Gehris,* 233 Pa. Superior Ct. 144, 148, 334 A.2d 753, 755 (1975) : ". . . . if the ultimate decision rests on a statement asserted by one party and denied by the other, where there is no corroborative evidence, demeanor on the stand is necessarily dispositive of the issue and *is the kind of evidence that cannot effectively be reviewed by an appellate court."* (Emphasis added). See also, *Uhlinger v. Uhlinger,* 169 Pa. Superior Ct. 574, 83 A.2d 423 (1951).

In the instant case, the parties were the only witnesses to testify and gave differing accounts of events surrounding the separation. The appellant alleged that she left "[b]ecause my life was so miserable and unbearable and mean that I just couldn't take it any longer; that I felt like if he didn't leave, I would lose my nerves; get a nervous breakdown." She testified that her husband kept asking her when she was leaving, that he frequently called her names, that he punched her on the arm once and on the breast three times, and that he did not talk to her at all. Further, appellant claimed that her husband "slept at his mother's in the air conditioned room; and I slept upstairs." (The couple lived in an apartment above that of appellee's mother.) Finally, appellant stated that she was currently receiving psychiatric attention for a nervous breakdown. The remainder of appellant's evidence was related to the amount of income and expenses of the parties.

The appellee agreed that ". . . we weren't getting along too well." He explained his lack of communication by stating "[i]f I came home from work, if I said anything, we would argue. So, if I didn't say anything, she would argue with me because I wasn't talking to her." Although appellee told appellant that he wanted a divorce, he denied telling her to leave. Appellee discovered appellant's planned departure only after he received a phone call from someone who told him that movers were loading his furniture into a van. Appellee denied that he punched appellant in the arm or on her breast: "This incident that she mentioned with the bruise on her arm, I took my index finger and went this way to her (indicating), I imagine about a week before she left. And it was just my index finger. It was not any fist or my hand or any part of my body except for the index finger. . . .

"Q. Did you punch her breast at all?

"A.   Not to my knowledge. The only time I think I turned her upside down and gave her a tanning on the bottom. I guess it must have been twenty years ago, eighteen years ago. That's the only time I laid a hand on my wife." He admitted engaging in name-calling "in a fit of anger," but testified that appellant also verbally abused him. Appellee explained his reasons for sleeping at his mother's: ". . . when the nights were humid and because I mind the heat quite a bit, and if I was going to go to work and do a good day's work, I needed my rest. So, I slept downstairs because of this.

"Q.   Did you ask her to come down and sleep with you?

"A.   Yes, I did. And also my mother did too.

"Q.   What was her answer?

"A.   She said, 'No. I didn't mind the heat. I'd rather sleep in my own bed.' " Further, he testified that during the month preceding the separation, he spent the night at his mother's only four or five times.

Appellee pointed to appellant's family's frequent interference in the couple's marriage as a source of tension between the parties: "We, as husband and wife, could never sit down and decide what we wanted to do. It was her family and my wife who decided what I was supposed to do. And this I would not permit. And I wasn't going to permit it.

"Q.   In other words, you wouldn't do what her family told you to do?

"A.   And also I wouldn't do what her family told her to do. And this, when I figured they were going to push her around, I got mad. And I think they were pushing her around, but she didn't mind it. And I got mad. . . .

"A.   I argued with her and trying to put out to her what they were doing. What was being done to her wasn't right in her best interest I thought. She just couldn't see it though."

In its opinion, the lower court stated that "[t]he Court was impressed with the husband. Unlike many

witnesses, he related both the good and the bad about himself. He was very candid and frank and *the Court considers his testimony credible."* (Emphasis added). Neither party introduced any corroborative evidence at all. The court's view was based largely on its personal observations of the witnesses. Thus, this Court may not reverse the lower court unless, believing the appellee's testimony, this Court nonetheless finds that appellant lawfully abandoned the marital abode.

The testimony revealed that the parties were unhappily married, that they argued frequently, that occasionally appellee removed himself from his bedroom to seek the comfort of air-conditioned sleeping quarters, and that despite twenty-five years of marriage, the parties never solved problems stemming from the wife's family ties. There is no clear and convincing evidence that the appellee struck appellant, that he slept elsewhere knowing that his action made his wife nervous. There was evidence that the parties quarreled and that bitter words were exchanged. But if one accepts appellee's account of such incidents, appellant was often at fault and fully participated in such exchanges. The evidence fails to show that appellant had legal justification for absenting herself from the marital home.[1] Thus, I find that the lower

---

1. The Majority cites *Boggs v. Boggs*, 221 Pa. Superior Ct. 22, 289 A.2d 479 (1972), same case, 222 Pa. Superior Ct. 209, 294 A.2d 925 (1972), for the proposition that appellee had the burden to show that appellant's conduct was independent of her mental and emotional instability. The only testimony presented by appellant as to her mental condition was: "I have had a nervous breakdown. And I am under psychiatric care." We stated in *Boggs v. Boggs*, 222 Pa. Superior Ct. 209, 211, 294 A.2d 925, 927 (1972), that "[a]ppellant does not have to establish a prima facie case of insanity to shift the burden of proof to her husband; she need only submit competent evidence that she suffered from a mental or emotional illness which significantly contributed to her behavior." In *Boggs v. Boggs*, 221 Pa. Superior Ct. 22, 31, 289 A.2d 479, 483 (1972), we stated that "[w]here the wife demonstrates (1) the

court did not abuse its discretion in denying appellant's petition.

The order of the lower court should be affirmed.

JACOBS, J., joins in this dissenting opinion.

existence of mental illness, (2) her husband's knowledge of her mental illness prior to the marriage, and (3) her husband's claim of indignities, as opposed to adultery, the trial court must give proper consideration to all these factors in resolving the question of support." Assuming arguendo that we treat the problem of mental illness in the same manner in support cases as in divorce cases as was involved in *Boggs*, I fail to find any competent evidence in the record to show that appellant suffered from an illness that contributed significantly to her behavior.