396 A.2d 761

**Sandra K. LARKIN, Appellant,**

**v.**

**Walter F. LARKIN, Appellee.**

Superior Court of Pennsylvania.

Argued March 20, 1978.

Decided Dec. 29, 1978.

Arthur L. Jenkins, Jr., Norristown, for appellant.

J. Peirce Anderson, Norristown, submitted a brief for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

SPAETH, Judge:

This appeal arises from an order dismissing a petition for support brought by appellant-wife against her husband. The lower court dismissed the petition on the ground that the wife had not met her burden of establishing an adequate reason in law for leaving the marital domicile.

The parties were married on September 5, 1959, and after the completion of his schooling, the husband established a dental practice. The wife was a homemaker. Their marriage was filled with tension, and before their final separation the wife was hospitalized on at least ten occasions because of emotional problems. The parties have three children, whose permanent custody has been awarded to the husband. At the hearing held on the wife's petition for support, uncontradicted testimony established that on February 11, 1975, the husband either struck or pushed the wife during an argument, and then ordered her out of their house. Shortly thereafter, the wife was allowed back into the house, but eight days later she left the marital domicile and voluntarily committed herself to a hospital, to be treated for mental illness. She was diagnosed as suffering from

an "acute schizophrenic episode." When she left the hospital two weeks later, she declined to return to her husband, and since then has lived with friends and relatives. The husband neither consented nor objected to her leaving.

On appeal, the wife gives two justifications for her refusal to return to her husband. First, she cites her husband's actions on February 11, 1975, as cause for her leaving him. Second, she claims that she had reasonable cause to believe that her husband was engaged at the time of their separation in a meretricious relationship with his dental assistant. Because we believe the wife had adequate legal cause to leave the marital domicile, we reverse the lower court's order.

We have stated that a wage-earning spouse has the obligation to support a financially dependent spouse, and that this obligation does not arise out of debt or contract, but is imposed by law as an incident of the marital status. *Commonwealth ex rel. Lebowitz v. Lebowitz*, 227 Pa.Super. 593, 595, 307 A.2d 442, 443 (1973). Thus, when a wife, who has been dependent upon her husband's earnings during their years of union, separates from her husband for adequate legal cause, the husband will be required to support her when he is able to do so. *Commonwealth ex rel. Darges v. Darges*, 202 Pa.Super. 330, 195 A.2d 847 (1963). The law governing the burden of proof in support actions where the wife has separated from her husband is well settled. In such instances, it is unnecessary for the wife in order to procure an order of support to present as grounds for leaving her husband grounds that would also entitle her to a divorce. Rather, the wife need only show by sufficient evidence an adequate legal cause for leaving. *Commonwealth ex rel. Halderman v. Halderman*, 230 Pa.Super. 125, 326 A.2d 908 (1974); *Commonwealth ex rel. Friedman v. Friedman*, 223 Pa.Super. 66, 297 A.2d 158 (1972); *Commonwealth ex rel. Young v. Young*, 207 Pa.Super. 440, 217 A.2d 857 (1966); *Commonwealth ex rel. Shapiro v. Shapiro*, 204 Pa.Super. 135, 203 A.2d 369 (1964); *Commonwealth ex rel. DiPietro v. DiPietro*, 175 Pa.Super. 18, 102 A.2d 192 (1954).

We have defined "adequate legal cause" as meaning any cause that justifies the spouse's departure. *Commonwealth ex rel. Reddick v. Reddick*, 198 Pa.Super. 111, 114–115, 181 A.2d 896, 898 (1962). In contrast, the only cause that will excuse a wage-earning spouse's refusal to support a dependent spouse is conduct on the dependent spouse's part that would be a valid ground for a decree in divorce. *Commonwealth ex rel. Halderman v. Halderman, supra; Commonwealth ex rel. Rovner v. Rovner*, 177 Pa.Super. 122, 111 A.2d 160 (1955); *Commonwealth ex rel. Rankin v. Rankin*, 170 Pa.Super. 570, 87 A.2d 799 (1952). "Thus a wife's failure to live with the husband does not justify the husband's refusal to support the wife unless the separation is willful and malicious and without consent or encouragement." *Halderman v. Halderman*, 230 Pa.Super. at 128–29, 326 A.2d at 911.

Because each support action presents its own peculiar factual situation, precedent rarely controls the outcome. Still, it is helpful to recall some of our past applications of the above standards.

In *Commonwealth ex rel. Loosley v. Loosley*, 236 Pa.Super. 389, 345 A.2d 721 (1975), we held that where the testimony established that the husband knew the wife was being treated for a psychiatric disorder, yet persisted in sleeping in a separate bedroom, even though this made her nervous, and also exchanged bitter words with her and told her on numerous occasions that he wanted a divorce, the wife had reasonable cause to leave. In *Commonwealth ex rel. Ross v. Ross*, 206 Pa.Super. 429, 213 A.2d 135 (1965), a support order was upheld where the wife testified that she left her husband because he would curse her and argue with her incessantly, and that if she tried to escape him by sleeping in their second bedroom, he would follow her, pull the pillows and blankets from her, and try to drag her out of bed. In *Commonwealth ex rel. Keeth v. Keeth*, 223 Pa.Super. 96, 289 A.2d 732 (1972), we held that where the husband was away from home an entire weekend, and the wife found him on Sunday of that weekend in his car with another woman, and the husband slapped the wife after she slapped

the woman, the wife was entitled to support from her husband after he permanently moved out of their common abode. In *Commonwealth ex rel. Lebowitz v. Lebowitz, supra,* a wife was held to have had adequate legal cause for leaving her husband when he refused to allow her to be a practicing Jehovah's Witness in their house. Finally, in *Commonwealth ex rel. Margiasso v. Margiasso,* 190 Pa.Super. 637, 155 A.2d 226 (1959), we upheld a support order where the wife left her husband on account of his excessive demands for sexual relations with her, and as a result of her refusal to submit to his desires he reduced her household allowance, hit her on one occasion, and threatened her with something "desperate" if she did not accede. *See also Commonwealth ex rel. Thompson v. Thompson,* 220 Pa.Super. 400, 289 A.2d 183 (1972); *Commonwealth v. Gleason,* 166 Pa.Super. 506, 72 A.2d 595 (1950); *Commonwealth ex rel. Cripps v. Cripps,* 161 Pa.Super. 417, 55 A.2d 437 (1947); *Commonwealth v. Spadine,* 130 Pa.Super. 77, 196 A. 898 (1938).

On the other hand, we have denied petitions for support where the wife left the husband because he refused to give her two thousand dollars, *Commonwealth ex rel. Coleman v. Coleman,* 184 Pa.Super. 256, 133 A.2d 307 (1957); where the wife left, even though her husband loved her, because members of the husband's family complained of her race, *Commonwealth ex rel. Pitucci v. Pitucci,* 200 Pa.Super. 591, 189 A.2d 912 (1963); where the wife left because her husband criticized her housework (and she was also seeing another man), *Commonwealth ex rel. Bergwerk v. Bergwerk,* 228 Pa.Super. 190, 323 A.2d 243 (1974); and where the wife's reasons for leaving were expressed in generalities, such as the fact that her husband "went into temper tantrums," charged her with infidelity, and complained of her "incapacity to do for him," *Commonwealth ex rel. Van Wagenen v. Van Wagenen,* 167 Pa.Super. 354, 74 A.2d 740 (1950). *See also Commonwealth ex rel. Friedman v. Friedman, supra; Commonwealth ex rel. Udis v. Udis,* 174 Pa.Super. 624, 101 A.2d 144 (1953); *Commonwealth ex rel. Arbitman v. Arbitman,* 161 Pa.Super. 529, 55 A.2d 586 (1947).

In the present case the wife had reasonable cause to believe that her husband was in love with his assistant, and as a result, had been unfaithful. The assistant was hired by the husband in 1967. Soon after her employment, the assistant became the cause of discord between the husband and the wife. The wife asked the husband on numerous occasions to fire the assistant, but he steadfastly refused. The husband and assistant frequently spent weekends together skiing on the ski patrol, and on these occasions the husband would often not return to his home until three a. m. What most impresses us, however, is the husband's alacrity in making the assistant a familiar part of his household immediately upon his wife's departure on February 19, 1975. On the very day that the wife left, the assistant took over the care of the husband's children. She resigned her position as assistant, which paid $150.00 per week, to become their caretaker for $44.00 per week. Although she does not live in the husband's home, she often remains there until after ten or eleven at night. In addition, the husband has taken his recent summer vacations with her. When asked at one of the support hearings whether he had had intercourse with her since his wife's departure, the husband invoked his fifth amendment right against self-incrimination, which invocation the court upheld.[1] In *Commonwealth ex rel. Korn v. Korn*, 204 Pa.Super. 153, 203 A.2d 341 (1964), we held that a spouse's invocation of the fifth amendment at a support hearing throws suspicion on his conduct. In *Copeland v. Copeland*, 155 Pa.Super. 102, 38 A.2d 364 (1944), we held that although adultery committed by a husband after his wife had maliciously deserted him will not of itself defeat his suit for divorce, still, this fact of adultery may shed considerable light on the husband's relations with his paramour prior to the separation. *See also Jones v. Jones*, 189 Pa.Super. 461, 151 A.2d 643 (1959); *Boyer v. Boyer*, 183 Pa.Super. 260, 130 A.2d 265 (1957).

1. We have serious doubts as to the propriety of the court's ruling on this point.

■ The facts on the record may be inadequate to have supported a suit by the wife for divorce on the ground of adultery, but as we have already noted, the level of proof required of the deserting spouse in support actions is not so exacting. *Commonwealth ex rel. Rovner v. Rovner, supra; Commonwealth v. Gleason, supra.* Further, even in divorce actions a spouse who has reasonable grounds for believing that the other person has been unfaithful is not required to stay in the marital domicile at the risk of being adjudged guilty of desertion. *Paterson v. Paterson,* 178 Pa.Super. 615, 115 A.2d 919 (1955); *Copeland v. Copeland, supra.* Nor is a spouse susceptible to a charge of indignities for charging the other with unfaithfulness, when the other's actions warrant the charge. *DeBias v. DeBias,* 245 Pa.Super. 266, 369 A.2d 396 (1976). Here, the husband's acts did give the wife cause to question his faithfulness to her, and nothing in the record indicates that he tried to allay her fears.[2]

■ We recognize that in one of the support hearings the husband denied that he had ever had intercourse with his assistant before his wife's departure; however, we do not consider this testimony conclusive on the issue of the wife's right to support. In a support proceeding the critical fact is not whether the husband was actually unfaithful, but whether the wife had reasonable cause to suspect he was. Also, we recognize the narrow scope of our review of an order dismissing a petition for support. Nevertheless, we will reverse an order denying a petition where there is insufficient evidence to support the denial. *Commonwealth ex rel. Loosely v. Loosley, supra; Commonwealth ex rel. Halderman v. Halderman, supra; Commonwealth ex rel. Thompson v. Thompson, supra.*

2. Indeed, what evidence there is tends to show that the husband exacerbated his wife's anxieties. In 1971 or 1972, the husband filed a divorce action against the wife while they were still living together. The husband declined, however, to show the courtesy of telling his wife of the action, so that the wife first learned of it when a neighbor mentioned that she had seen a notice in the newspaper.

302

The order of the lower court is reversed, and the case remanded for the entry of an appropriate order.

HOFFMAN, J., did not participate in the consideration or decision of this case.