644 A.2d 1256

**Margaret McKOLANIS**

v.

**David McKOLANIS, Appellant.**

Superior Court of Pennsylvania.

Argued May 24, 1994.

Filed July 20, 1994.

Jonathan C. Hook, Brookville, for appellant.

Jay Y. Rubin, Indiana, for appellee.

Before BECK, HUDOCK and CERCONE, JJ.

CERCONE, Judge.

The principal issue in this support action is whether the wife, who voluntarily left the marital home without her husband's consent, had adequate legal reason for doing so. We

find wife's reasons to be legally adequate and affirm the order of the trial court awarding spousal support to wife.

Husband and wife married in 1983 and are the parents of two sons. The oldest boy suffers from "persuasive developmental disorder." Both husband and wife testified at a hearing *de novo* about the strain this condition placed upon their relationship. Although the marriage was foundering, it was not until 1992, when husband announced his proclivity for cross-dressing, that wife left husband. At that time, husband informed wife that he was a transvestite and had been since before the time of their marriage.

At the hearing, wife testified that she did not wish to be married to a transvestite. Husband both testified and presented testimony that it is possible for a marriage to work where one of the parties is a transvestite and encouraged counseling for wife. The trial court determined that wife's reasons for leaving the marital residence were legally adequate and awarded wife support. Thereafter, husband filed the instant timely appeal.

 Husband raises one issue for our review:

Does husband's status as a cross-dresser transvestite constitute just cause for Wife's departure from the home such that the Wife may be entitled to spousal support?

Our scope of review is limited. We may reverse a support order only where the order cannot be sustained on any valid ground. *Shovlin v. Shovlin*, 318 Pa.Super. 516, 521, 465 A.2d 673, 676 (1983). Absent an abuse of discretion or insufficient evidence to sustain the support order, this court will not interfere with the broad discretion afforded the trial court. *Rock v. Rock*, 385 Pa.Super. 126, 130, 560 A.2d 199, 201 (1989). Assessment of the credibility of witnesses is within the sole province of the trial court. *Id.*

 Our Supreme Court has opined:

"Abuse of discretion" is synonymous with a failure to exercise a sound, reasonable, and legal discretion. It is a strict legal term indicating that [an] appellate court is of opinion that there was commission of an error of law by the trial

court. It does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge but means the clearly erroneous conclusion and judgment—one that is clearly against logic and effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; and improvident exercise of discretion; and error of law.

*Commonwealth v. Powell*, 527 Pa. 288, 297 n. 8, 590 A.2d 1240, 1244 n. 8 (1991) (quoting Black's Law Dictionary, 5th Ed. (1979). Where there is insufficient evidence to support the trial court's order, the judgment is manifestly unreasonable and must be reversed. *Myers v. Myers*, 405 Pa.Super. 290, 293, 592 A.2d 339, 341 (1991).

■ A wife, seeking support following a nonconsensual voluntary vacation from the marital home has the burden of proving that her husband's conduct justified her in leaving the marital home. *Rock v. Rock*, 385 Pa.Super. at 130, 560 A.2d at 201. "A voluntary withdrawal by [a spouse] without adequate legal reason defeats her right to support." *Myers v. Myers*, 405 Pa.Super. at 294, 592 A.2d at 341 (quoting *Martin v. Martin*, 282 Pa.Super. 484, 486, 423 A.2d 6, 7 (1980)).

> [The] phrase adequate legal cause for leaving is not subject to exact definition. It must be interpreted based on the facts of each case. A spouse who over a period of time suffers psychological oppression may be harmed as much as a spouse who over a period of time suffers physical injury. The law must recognize this harm and not force the oppressed spouse to remain in the unhappy environment in order to be entitled to support. On the other hand, the law should not impose on a spouse the duty of support where his or her mate departs the marital residence maliciously or casually on a whim or caprice.

*Clendenning v. Clendenning*, 392 Pa.Super. 33, 38–39, 572 A.2d 18, 21 (1990). *Accord Myers v. Myers*, 405 Pa.Super. at 294, 592 A.2d at 341. It is not necessary to establish that the wife prove grounds for leaving which would justify grounds for

divorce. *Myers v. Myers,* 405 Pa.Super. at 294, 592 A.2d at 341.

In *Larkin v. Larkin,* 262 Pa.Super. 294, 396 A.2d 761 (1978) this court summarized applicable case law as follows:

> In *Commonwealth ex rel. Loosley v. Loosley,* 236 Pa.Super. 389, 345 A.2d 721 (1975), we held that where the testimony established that the husband knew the wife was being treated for a psychiatric disorder, yet persisted in sleeping in a separate bedroom, even though this made her nervous, and also exchanged bitter words with her and told her on numerous occasions that he wanted a divorce, the wife had reasonable cause to leave. In *Commonwealth ex rel. Ross v. Ross,* 206 Pa.Super. 429, 213 A.2d 135 (1965), a support order was upheld where the wife testified that she left her husband because he would curse her and argue with her incessantly, and that if she tried to escape him by sleeping in their second bedroom, he would follow her, pull the pillows and blankets from her, and try to drag her out of bed. In *Commonwealth ex rel. Keeth v. Keeth,* 223 Pa.Super. 96, 289 A.2d 732 (1972), we held that where the husband was away from home an entire weekend, and the wife found him in his car with another woman, and the husband slapped the wife after she slapped the woman, the wife was entitled to support from her husband after he permanently moved out of their common abode. In *Commonwealth ex rel. Lebowitz v. Lebowitz,* 227 Pa.Super. 593, 307 A.2d 442 (1973), a wife was held to have adequate legal cause for leaving her husband when he refused to allow her to be a practicing Jehovah's Witness in their house.... On the other hand, we have denied petitions for support where the wife left the husband because he refused to give her two thousand dollars, *Commonwealth ex rel. Coleman v. Coleman,* 184 Pa.Super. 256, 133 A.2d 307 (1957); where the wife left, even though her husband loved her, because members of the husband's family complained of her race, *Commonwealth ex rel. Pitucci v. Pitucci,* 200 Pa.Super. 591, 189 A.2d 912 (1963); where the wife left because her husband criticized her house work (and she was also seeing

another man), *Commonwealth ex rel. Bergwerk v. Bergwerk,* 228 Pa.Super. 190, 323 A.2d 243 (1974); and where the wife's reasons for leaving were expressed in generalities, such as the fact that her husband "went into temper tantrums," charged her with infidelity, and complained of her "incapacity to do for him," *Commonwealth ex rel. Van Wagenen v. Van Wagenen,* 167 Pa.Super. 354, 74 A.2d 740 (1950)....

*Larkin,* supra, 262 Pa.Super. at 298–99, 396 A.2d at 763–64.

After careful review, we find no case law directly addressing the issue of whether a spouse's cross-dressing constitutes legal justification for leaving the vacating the marital home. However, we note that in *Steinke v. Steinke,* 238 Pa.Super. 74, 357 A.2d 674 (1975), this court addressed whether a husband's cross-dressing constituted grounds for divorce. In *Steinke,* the husband dressed in women's clothes around the house and later began taking hormones with the view of developing himself into a woman. Eventually, husband began to assume the total identity and appearance of a woman at work and in public.

In holding that such actions constituted grounds for divorce, we stated:

That the appellant-wife in the present case has come to find life with her husband intolerable and burdensome does not indicate unusual sensitivity or extraordinary delicacy on her part. It is certainly to be anticipated that a reasonable woman might react to her husband adopting not only the clothing but the full physical appearance of a woman, by becoming shocked and repelled. This Court has recognized that unnatural sexual conduct or excessive and unusual sexual demands represents indignities making a spouse's condition intolerable and life burdensome.

\* \* \* \* \* \*

A course of conduct which is humiliating and degrading to a woman has been held to provide evidence sufficient in itself to constitute indignities.

*Id.* at 79–80, 357 A.2d at 676–77 (footnotes and citations omitted).

In the instant case, husband argues that there is no such evidence of humiliating or degrading actions as were present in the *Steinke* case. He contends that he is before this court merely because he revealed a hidden impulse to wife. He believes that by revealing this proclivity, the parties could seek counseling and strengthen their marriage.

Upon reviewing the evidence presented at the hearing, the trial court found that husband sought counseling as "the panacea to reconciling the parties, or rather the wife into accepting this alternate lifestyle of husband." Trial Court Opinion date 2/1/94 at 2. Moreover, our review of the testimony reveals that husband, although aware of these yearnings, did not inform wife of his cross-dressing prior to their marriage. N.T. 10/7/93 at 19. Although wife acknowledged that she had never seen her husband dressed as a woman, husband informed her that he did appear in public cross-dressed. *Id.* at 18, 19. Wife confirmed that husband wanted to seek counseling, but not to change the cross-dressing behavior. *Id.* at 19.

More than nineteen years have passed since this court's decision in *Steinke,* and society's acceptance of alternative lifestyles has increased over the years. In this particular marriage, however, we find that husband's cross-dressing caused such harm to wife as to justify her departure from the marital home. The sexual identity of one's marital partner, no matter the lifestyle, is crucial to the marriage relationship. Husband's concealment of his cross-dressing until 1992, his subsequent decision to inform wife of this proclivity, as well as his appearance in public in female attire, was inconsistent with wife's conception of her status as a spouse and justified her departure.

Under the facts of this case, we find that wife established legal justification to vacate the marital residence. According-

ly, we affirm the order of the trial court awarding wife support.

Order affirmed.