**Sokso v. Sokso**

C.P. of Berks County, no. 95-1580-00.

*Albert Wrigley,* for plaintiff.
*Carolyn Mirabile,* for defendant.

SCHMEHL, *J.,* March 25, 1996—This matter comes before the court on plaintiff's exceptions to the findings of fact, conclusions of law and recommendation of the Domestic Relations Hearing Officer.

The plaintiff filed a complaint for spousal and child support on May 22, 1995. At a conference held in Domestic Relations on June 30, 1995, the defendant's weekly net was found to be $737 and the plaintiff's weekly net was found to be $343. On October 16, 1995 the Domestic Relations Hearing Officer filed her recommendation which states that the parties stipulated to their net incomes, to their each having custody of one child, and to the amount of support that would be due if the plaintiff was found to be eligible for spousal support and also if she was found not eligible for spousal support. Testimony was then taken regarding the plaintiff's entitlement to spousal support.

The Hearing Officer found that plaintiff had not met her burden in showing by sufficient evidence an adequate legal cause for leaving. The plaintiff filed exceptions to the Domestic Relations Hearing Officer's recommendation on October 26, 1995. The exceptions are as follows:

"(1) Plaintiff disputes the Hearing Officer's findings that there was not adequate legal cause for her to leave.

"(2) Plaintiff presented sufficient testimony to establish cause to justify her departure from the marital home, including the defendant's stating he didn't love her.

"(3) The Hearing Officer misconstrued the testimony as to the plaintiff becoming more independent.

"(4) The Hearing Officer erred in finding that defendant did not consent to plaintiff's leaving.

"(5) The Hearing Officer erred in finding that plaintiff's unhappiness with the marriage was based primarily on her personal problems and not on defendant's behavior.

"(6) The Hearing Officer erred as a matter of law in finding that there was not adequate legal cause for plaintiff's departure."

A dependent spouse is entitled to support until it is proven that the conduct of the dependent spouse constitutes grounds for a fault divorce. *Crawford v. Crawford,* 429 Pa. Super. 540, 549, 633 A.2d 155, 159 (1993); *Roach v. Roach,* 337 Pa. Super. 440, 487 A.2d 27 (1985). A payor spouse can only defeat a claim for spousal support by showing that the conduct of the payee spouse constitutes valid grounds for divorce. *Larkin v. Larkin,* 262 Pa. Super. 294, 396 A.2d 761 (1978). The party seeking to nullify the obligation must prove such conduct by clear and convincing evidence. *Crawford, supra.* Defendant argues that plaintiff abandoned the marital home, thus relieving him of any obligation to pay to her spousal support. Plaintiff left the marital home on May 7, 1995. (N.T., p. 6.) Prior to her departure, she testified that on many occasions she discussed with defendant the possibility of leaving,

and that his attitude was that he did not really care and that he would not leave. (N.T., p. 19.) After being released from a psychiatric hospitalization, plaintiff requested defendant to leave the marital home and stay with his sister for a short time, but defendant refused and told her that if she wanted to leave she should leave but that he was not leaving. (N.T., p. 20.)

Plaintiff argues that defendant has not established that she deserted him or otherwise displayed conduct that would constitute valid grounds for a divorce. She also argues that defendant did not properly establish that he did not consent to plaintiff's leaving as he stated that plaintiff could leave if she wanted to but he was not leaving. Defendant argues that abandonment of the marital home constitutes valid grounds for divorce which would defeat a dependent spouse's right to support. *Morley v. Morley,* 283 Pa. Super. 397, 424 A.2d 524 (1981). The record is conflicted as to whether wife's vacation of the marital home was possibly consensual; thus the court assumes it was not mutually agreed upon.

A spouse who has voluntarily left the marital home who then seeks support has the burden of establishing an adequate legal cause for leaving. *Id.* "Adequate legal cause" for leaving the marital home must be interpreted on a case by case basis. *Clendenning v. Clendenning,* 392 Pa. Super. 33, 572 A.2d 18 (1990); the term is defined as "any cause that justifies the spouse's departure" *Morley, supra* at 401, 424 A.2d at 526. (citations omitted) The reasons for leaving need not be themselves grounds for divorce. *Larkin, supra.*

Plaintiff alleges that defendant was drinking prior to their marriage, but that his personality changed over

the past couple of years. (N.T., p. 21.) Defendant experienced "blackouts" where he would later not recall things he had said; he ended up in the emergency room of the hospital in 1994 because of his intoxication (he was first thought to have suffered a possible ministroke or a heart condition). (N.T., p. 21.) Defendant is allegedly attending AA, but plaintiff testified that he has said he was not drinking previously and yet had continued to drink. (N.T., p. 23.)

Plaintiff testified to two psychiatric hospitalizations. The first hospitalization was at Friends Hospital in Philadelphia in 1988 for a period of three weeks. (N.T., p. 9.) She was hospitalized because of panic attacks and an anxiety disorder. (N.T., p. 10.) Plaintiff was hospitalized the second time in June 1994 at Pottstown Hospital for two and one-half (2 1/2) weeks for what she characterized as severe depression, marital problems, anxiety, and being suicidal. (N.T., p. 11.) One of the things required for her discharge from the hospital was that the parties attend marriage counseling, but on the day they were to attend such counseling, defendant backed out. (N.T., pp. 19-20.)

In her brief and at argument, plaintiff alleged that when she attempted to explain the basis for her emotional problems (in that she would have testified the stresses of her husband's behavior were a large part of her need for hospitalization) the Hearing Officer would not permit her to testify on the basis she was not a medical expert. (N.T., p. 10.) A party is competent to testify as to her own health. *Hesidenz v. Carbin*, 354 Pa. Super. 610, 512 A.2d 707 (1986). Despite the apparent error in not allowing plaintiff's complete testimony, there is sufficient evidence for the court to

determine plaintiff suffered from emotional problems, and that this is germane to the support entitlement issue. Plaintiff testified that since she left the marital home, her self-esteem has improved. (N.T., p. 13.)

Plaintiff alleged that the parties' marital difficulties escalated when she became "a little more independent and started to make [her] own decisions," (N.T., p. 7), and that prior to that time she acquiesced to defendant's decisions. (N.T., p. 8.)[1] Plaintiff testified that defendant degraded her and tried to derail her friendships and lower her self-esteem. (N.T., p. 9.) He was also verbally abusive, calling her a "lazy, fat slob" on perhaps a weekly basis or more. (N.T., p. 14.) He spoke to her in a manner that made her feel like an idiot over a period of years, although it worsened in the year or two prior to separation. (N.T., p. 15.) Defendant failed to show affection to plaintiff, "Not unless he wanted sex." (N.T., p. 16.) Plaintiff testified that when she asked defendant if he loved her, she often would not get an answer, or he might say he didn't know, "and his latest answer was that he didn't even know who I was but I would never get a yes." (N.T., p. 16.)

Plaintiff described defendant as "meticulous," in that he would yell if the dishwasher was not stacked to his liking or if the refrigerator or cupboards were not arranged to his liking. (N.T., p. 17.) He was also meticulous about how the bed was made. (N.T., p. 17.)

---

1. The Hearing Officer's report states plaintiff's emerging independence apparently created problems in the marriage. The record indicates that the only reason the problems were not more evident prior to that point was because plaintiff was, perhaps, more passive.

Plaintiff testified that defendant "would yell and he'd just complain. He complained about everything." (N.T., p. 17.)

Plaintiff also testified that defendant tried to prevent her from getting support from her friends. (N.T., p. 17-18.) She testified that although she would talk on the telephone in the living room, when defendant went to bed he would yell at her to hang up the phone. (N.T., p. 18.) He would tell plaintiff that he did not like a friend, saying he did not think she was a good influence on plaintiff; he once actually contacted a friend to tell her to keep out of their business. (N.T., p. 19.)

The defendant's testimony sought to refute plaintiff's claim for spousal support entitlement, but it failed to do so. He corroborated that plaintiff had previously asked him to leave the home, but stated that he told her he did not think it was a good idea, but he could not stop her from leaving. (N.T., p. 25.) He testified that he assumed many of the household duties because plaintiff was often asleep when he would return home from work. (N.T., p. 25.) He alleged that plaintiff would "holler" at him when they would try to talk to one another. (N.T., p. 27.)

The defendant admitted to drinking. (N.T., pp. 28-29.) He agreed that the emergency room intoxication incident occurred. (N.T., p. 28.) He admitted it was possible he called the plaintiff a fat slob or stupid, and then not recalled having said so after sobering up. (N.T., p. 29.) He admitted to criticizing plaintiff regarding the dishwasher and refrigerator, although he did attempt to explain why he did so. (N.T., pp. 30-31.) He stated he never told plaintiff to hang up the phone on her

friends, but only asked that she speak more quietly. (N.T., p. 31.) He also admitted that he told one of plaintiff's friends to stop interfering in their "married life." (N.T., p. 31.)

This court's finding is proper in view of the appellate cases in this jurisdiction, including *Larkin, supra* which enumerated cases where adequate legal cause had been demonstrated, including: *Commonwealth ex rel. Loosley v. Loosley,* 236 Pa. Super. 389, 345 A.2d 721 (1975) (wife established that husband exacerbated her psychiatric disorder by sleeping in a separate room, arguing with her, etc.); *Commonwealth ex rel. Ross v. Ross,* 206 Pa. Super. 429, 213 A.2d 135 (1965) (wife who left her husband because he would curse at her, argue with her and would follow her and pull the pillows and blankets from her if she attempted to sleep in another bedroom to escape from him demonstrated adequate legal cause); *Commonwealth ex rel. Keeth v. Keeth,* 223 Pa. Super. 96, 289 A.2d 732 (1972) (wife who found her husband in a car with another woman after he had been absent for a weekend and who was subsequently slapped by her husband after she slapped the other woman showed adequate legal cause).

*Larkin* also listed cases where petitions for support were denied, including: *Commonwealth ex rel. Coleman v. Coleman,* 184 Pa. Super. 256, 133 A.2d 307 (1957) (wife left husband because he refused to give her $2,000); *Commonwealth ex rel. Bergwerk v. Bergwerk,* 228 Pa. Super. 190, 323 A.2d 243 (1974) (wife left because husband criticized her housework and she was also seeing another man); and *Commonwealth ex rel. Van Wagenen v. Van Wagenen,* 167 Pa. Super. 354, 74

A.2d 740 (1950) (wife's reasons for leaving were expressed in generalities).

Nothing in defendant's testimony establishes grounds for divorce which would relieve his obligation to pay spousal support, except for the evidence of plaintiff having left the marital home. The evidence is more than adequate to establish that plaintiff is entitled to spousal support in that defendant's conduct gave her adequate legal cause for vacating the marital home. In order to demonstrate "adequate legal cause" for leaving the marital home plaintiff need not establish grounds for divorce; however, the evidence presented here might in fact establish grounds for divorce. Plaintiff's exceptions are sustained. The parties' stipulations for spousal and child support shall be adopted by the court.

For the foregoing reasons, the court enters the following order:

## ORDER

And now, March 25, 1996, it is ordered that:

(1) Defendant shall pay $454 per month spousal support.

(2) Defendant shall pay $286 per month child support for David.

(3) This order shall be effective May 22, 1995.

(4) Defendant shall pay one-half of the child care expenses for the child David. These expenses shall be paid directly to the child care provider, Judy Krassowski, on a weekly basis.

(5) Defendant shall pay 70 percent of all unreimbursed medical expenses, and plaintiff shall pay 30 percent of such expenses. This amount shall include all amounts

expended for the care and treatment of David's foot condition.

(6) Defendant shall maintain all existing health, dental and vision insurance for plaintiff and the child.

(7) The amount of support shall be recalculated upon receipt by the parties of defendant's 1995 income figures and prepared tax returns, and the recalculated amount of support shall be applied retroactive to the effective date of this order.