**Mary L. WILLOUGHBY, Appellee,**

v.

**Roy A. WILLOUGHBY, Appellant.**

Superior Court of Pennsylvania.

Submitted July 6, 2004.

Filed Nov. 22, 2004.

Roy A. Willoughby, appellant, Pro Se.

Sandra L. Meilton, Harrisburg, for appellee.

BEFORE: KLEIN, GANTMAN, and TAMILIA, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Roy A. Willoughby ("Husband"), asks us to determine whether the trial court erred when it denied his petition to modify his court-ordered permanent alimony obligation. Specifically, Husband contends his incarceration constitutes a "change in circumstances" to relieve him of his spousal support obligations. We hold that an obligor's incarceration due to criminal activity does not alone represent a "change in circumstances" to justify complete relief from the obligor's spousal support obligations. Accordingly, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. The parties separated in 1994, and the court entered a spousal support order, upon agreement of the parties, which required Husband to pay $750 per month to his disabled wife, Appellee, Mary Willoughby ("Wife"). Upon a divorce decree entered in 1997, Husband was ordered to pay permanent alimony of $800 per month.

¶ 3 On April 25, 2001, Husband was fired from his job with the Commonwealth after criminal charges were brought against him for driving under the influence of alcohol. Subsequently, Husband's pension was frozen. Wife received her last alimony check on July 28, 2001. On November 30, 2001, Husband was held in contempt by the Dauphin County Court of Common Pleas for failure to make past alimony payments; he was directed to commence immediate payment of current payments and pay his full arrearages.

¶ 4 On December 18, 2002, Husband entered a guilty plea to numerous crimes, including theft by deception and forgery. He was sentenced to three to seven years' imprisonment. Twelve months later, on December 8, 2003, Husband filed a petition to modify his alimony payments during his incarceration. In his petition, Husband argued his incarceration constituted a "change in circumstance" that entitled him to a modification of the alimony order. The court dismissed his petition based on the Pennsylvania Supreme Court's recent decision in *Yerkes v. Yerkes*, 573 Pa. 294, 824 A.2d 1169 (2003) (holding incarceration alone is insufficient basis for modification of existing child support order).

¶ 5 On January 13, 2004, Husband filed a notice of appeal, which the Dauphin County Domestic Relations Office ("DRO") treated as a demand for a *de novo* hearing pursuant to Pa.R.C.P. 1910.11. The court inadvertently scheduled a hearing upon notification of Husband's release from prison. Ultimately, the court recognized Husband's January 13th filing as a notice of appeal and treated it as valid. Husband's timely appeal is now properly before us for review.

¶ 6 Husband raises two issues for our review:

> WHETHER THE [TRIAL] COURT ERRED IN DISMISSING [HUSBAND'S] MOTION TO MODIFY ORDER OF SUPPORT USING AS ITS LEGAL BASIS CASE LAW THAT RELATES TO CHILD SUPPORT AND NOT ALIMONY?
>
> WHETHER [HUSBAND] IS ENTITLED TO MODIFY THE EXISTING ORDER FOR ALIMONY/SPOUSAL SUPPORT WHERE A CHANGE IN CIRCUMSTANCES HAS OCCURRED WHICH MATERIALLY [A]FFECTS [HUSBAND'S] FINANCIAL RESOURCES?

(Husband's Brief at iv).

¶ 7 "The role of an appellate court in reviewing alimony orders is limited; we review only to determine whether there has been an error of law or abuse of discretion by the trial court." *Lee v. Lee,* 352 Pa.Super. 241, 507 A.2d 862, 865 (1986). "Absent an abuse of discretion or insufficient evidence to sustain the support order, this Court will not interfere with the broad discretion afforded the trial court." *Hoffman v. Hoffman,* 762 A.2d 766, 769 (Pa.Super.2000) (quoting *McKolanis v. McKolanis,* 435 Pa.Super. 103, 644 A.2d 1256, 1257 (1994)). An abuse of discretion is more than an error in judgment; it occurs if the judgment is manifestly unreasonable or is the result of prejudice, bias or ill-will. *See Jayne v. Jayne,* 443 Pa.Super. 664, 663 A.2d 169 (1995). *See also Polito v. Polito,* 440 Pa.Super. 328, 655 A.2d 587 (1995) (stating standard of review of alimony orders is abuse of discretion or error of law).

¶ 8 In his first issue, Husband claims the trial court's reliance on *Yerkes, supra* is misplaced, because that case dealt exclusively with child support, whereas alimony payments are the sole issue in this case. Husband argues the trial court's decision is based on a misapplication of law constituting an abuse of discretion. Thus, he concludes, the trial court's order denying his petition to modify alimony payments should be reversed. We disagree.

¶ 9 In *Yerkes,* a father was incarcerated for sexually assaulting his daughter. He sought modification of his child support order on the sole argument that his incarceration rendered him unable to pay. *Id.* at 297, 824 A.2d at 1170. The Pennsylvania Supreme Court addressed, "whether incarceration, standing alone, is a 'material and substantial change in circumstances' that provides sufficient grounds for modification or termination of a child support order." *Id.* at 295, 824 A.2d at 1169. Recognizing that it had not yet directly addressed the issue, the Court reviewed case law from other jurisdictions and summarized three general approaches to assessing the effect of incarceration on support obligations.

¶ 10 The first approach, known as the "no justification" rule, states that criminal incarceration is "insufficient to justify elimination or reduction of an open obligation to pay child support." *Id.* at 299, 824 A.2d at 1172 (citation omitted). Conversely, the second approach, known as the "complete justification" rule, states criminal incarceration is sufficient to justify elimination or reduction of a child support obligation. *Id.* at 300, 824 A.2d at 1172. The third approach, known as the "one factor" rule, requires a court to consider the obligor's incarceration as one among other factors when determining whether to eliminate or reduce a child support obligation. *Id.*

¶ 11 The Court determined that the best interests of the child were served by adopting the "no justification" rule. *Id.* In reaching this conclusion, the Court en-

gaged in a detailed consideration of the rationales underlying each approach and related them to the overarching goals of child support. The Court recognized, "[t]he principal goal in child support matters is to serve the best interests of the child through provision of reasonable expenses." *Id.* at 297, 824 A.2d at 1171 (citation omitted). The Court explained:

> The fundamental disagreement between those courts applying a "no justification" rule and those adopting one of the other two rules hinges on whether relief should ever be granted to incarcerated parents. It appears that each court's ultimate conclusion on this issue is driven by three underlying considerations: (1) whether allowing relief to an incarcerated parent serves the best interests of the child, (2) whether relief is in accord with fairness principles, and (3) whether it is appropriate to treat incarceration in the same manner as voluntary unemployment.

*Id.* at 300–01, 824 A.2d at 1173.

¶ 12 "No justification" jurisdictions conclude, "it is in the best interests of the child for the support order to remain intact because of the possibility of future reimbursement." *Id.* at 301, 824 A.2d at 1173. If the obligor's support payments are suspended during his incarceration, the obligor benefits because no arrearage debt accrues; the obligee, however, incurs a burden because the obligee loses the possibility of future arrearage repayments. *Id.* at 302, 824 A.2d at 1174.

¶ 13 Further, "no justification" jurisdictions reason, "fairness principles dictate that an obligor should not benefit from criminal conduct or be allowed to use it as a means to escape child support obligations." *Id.* at 303, 824 A.2d at 1174. The *Yerkes* Court determined fairness principles favor the "no justification" rule, "because affording relief to the incarcerat-

ed parent would effectively subordinate child support payments to the parent's other financial obligations." *Id.* at 304, 824 A.2d at 1175. Accordingly, the Court concluded that just as other financial responsibilities are not relieved when the obligor is incarcerated, neither should an obligor be relieved of his child support obligations. *Id.*

¶ 14 Finally, "no justification" jurisdictions analogize incarceration to voluntary unemployment, reasoning that the incarcerated obligor, like the voluntarily unemployed obligor, suffers a reduction in income as a result of voluntary actions. While the *Yerkes* Court recognized other distinctions between the voluntarily unemployed obligor and the incarcerated obligor, it reasoned, "a reduction in income occasioned by criminal incarceration is clearly within the control of the obligor," because, "it is foreseeable that criminal conduct can lead to incarceration." *Id.* at 307, 824 A.2d at 1177.

¶ 15 Additionally, Section 3701 of the Domestic Relations Code states: "Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary." 23 Pa.C.S.A. § 3701(a). Well-established Pennsylvania law provides the purpose of permanent alimony is not punitive; it is to ensure that the formerly dependant spouse is able to meet her reasonable needs. *Isralsky v. Isralsky,* 824 A.2d 1178 (Pa.Super.2003); *Miller v. Miller,* 744 A.2d 778 (Pa.Super.1999); *Nemoto v. Nemoto,* 423 Pa.Super. 269, 620 A.2d 1216 (1993). Similarly, "the principal goal in child support is to serve the best interests of the child through provision of reasonable expenses." *Yerkes, supra* at 297, 824 A.2d at 1171. Accordingly, both child support and permanent alimony are based on meeting the

reasonable needs of the obligee. *Yerkes, supra; Isralsky, supra.*

¶ 16 In the instant case we see no reason to deviate from the Pennsylvania Supreme Court's determination in *Yerkes,* simply because we are dealing with permanent alimony. The Court makes clear that incarceration alone does not warrant complete relief from support obligations. While we recognize that permanent alimony and child support are governed by separate statutes,[1] the purposes and policies underlying both are sufficiently analogous to sustain our conclusion.

¶ 17 Additionally, principles of equity and fairness favor adoption of the "no-justification" rule in the context of permanent alimony. Criminal activity that might foreseeably lead to incarceration is "obviously within an individual's control," and is certainly distinguishable from illness, injury, job loss or other matters outside the control of the obligor that cause a reduction in income. *See Yerkes, supra* at 307, 824 A.2d at 1176 (citation omitted). Here, we see no reason to confer a benefit on Husband by modifying his permanent alimony order, where the sole reason for his reduced income is his voluntary criminal behavior.

¶ 18 Moreover, we recognize that if Husband is relieved of his alimony obligation, Wife is saddled with an inequitable burden. Adopting a "no-justification" rule in this context at least provides Wife with the possibility that Husband will repay the support owed. *See id.* Therefore, despite Husband's inability to make permanent alimony payments while incarcerated, principles of equity dictate that he should not be relieved of his duty to pay the accrued arrearages upon his release.

¶ 19 Additionally, as in *Yerkes, supra,* the "bright-line" character of the "no-justification" rule in this context promotes judicial economy by avoiding burdensome case-by-case determinations and limiting the overall number of modification petitions filed. Further, the rule is consistent with Pennsylvania law. Therefore, in the interests of equity, fairness and judicial economy we now apply the "no-justification" rule to petitions to modify permanent alimony orders, where the sole change in circumstances is the obligor's incarceration due to criminal activity.[2]

■ ¶ 20 In his second claim, Husband asserts he is entitled to modification of his permanent alimony obligation due to a material change in circumstances. Husband argues several factors cumulatively establish a material change in circumstances. First, Husband asserts his financial status has changed significantly since the permanent alimony payments were ordered in 1997. Specifically, Husband cites: he lost his job; his pension was frozen; and, he incurred an obligation to pay $118,509 in fines and restitution as a result of his 2002

---

1. We note that Wife's reliance on Pa.R.C.P. 1910.1 is misplaced, however this does not affect our conclusion. Rule 1910.1, "applies only to alimony *pendente lite.* The procedure for obtaining permanent alimony is governed by Section 3702 of the Divorce Code." Pa. R.C.P. 1910 Comment (March 30, 1994) (emphasis added). Therefore, Pa.R.C.P. 1910.1 is inapplicable because Husband's support order is for permanent alimony, not alimony *pendente lite,* and is governed by Section 3701 of the Domestic Relations Code. *See* 23 Pa. C.S.A. § 3701.

2. As a practical matter, we recognize that during his incarceration, Husband might not be able to pay permanent alimony or the accumulated arrearages. The significant arrearages that will accrue should not result in a contempt adjudication while he is in prison or immediately upon his release. Upon Husband's release, however, the court shall immediately conduct a hearing to enforce payment of the arrearages, pursuant to Section 3703 of the Domestic Relations Code.

conviction. Second, Husband argues his present incarceration renders him incapable of making support payments. Third, Husband references a letter he received from Wife in which she indicates she does not expect to receive alimony payments while he is incarcerated. Additionally, he claims Wife is presently working, despite her disability. Finally, Husband avers he has developed a heart condition in prison that will render improbable any significant gainful employment upon his release. Husband concludes he is entitled to relief from the trial court's decision due to these material changes in his circumstances. For the following reasons, we disagree.

¶ 21 Initially, we observe, Rule 302(a) of the Pennsylvania Rules of Appellate Procedure states: "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal." Pa. R.A.P. 302(a); *Weir v. Weir,* 428 Pa.Super. 515, 631 A.2d 650 (1993). In the instant case, Husband's concerns about his heart condition, his lack of financial resources, his frozen pension, and Wife's expectations and employment are not properly before us, as they were not raised before the trial court. Therefore, the sole factor properly preserved for our consideration as a change in circumstances is Husband's incarceration. Due to our disposition of Husband's first issue, we decline to give his second issue any further consideration.

¶ 22 Based upon the foregoing, we hold that an obligor's incarceration due to criminal activity does not alone constitute a "change in circumstances" to justify complete relief from the obligor's spousal support obligations. Accordingly, we affirm.

¶ 23 Order affirmed.