**Stark v. Stark**

*Christine Pfau-Laney*, for plaintiff.
*Julie M. Cooper*, for defendant.

GORBEY, *J.*, July 3, 2013—

## OPINION SUR APPEAL

### Procedural History

Tonia Stark (wife) and Mark A. Stark (husband) first became involved in this support matter on January 28, 2013, when wife filed a complaint for support for one child. On January 29, 2013, she filed an amended complaint for spousal support. An interim order for support of one child was issued on February 25, 2013, effective January 28. (N.T. 3) There was no order for spousal support because husband had questioned wife's entitlement. (N.T. 4) A hearing was held on April 3, 2013 and a subsequent order issued on April 10 sustained husband's position that wife was not entitled to spousal support. On May 9, 2013, wife filed an appeal to the Superior Court from the April 10 order. On May 10, 2013, wife filed a motion for reconsideration which was denied on May 14, 2013.

### Factual History

Wife left the marital residence on January 23, 2013. (N.T. 5) She contends that her motivation for leaving was husband's controlling nature, his violent proclivities, and his use of pornography. She reported that he would distract her so that she could not speak on the telephone

to her family, demanding instead attention to him. (N.T. 7, 9) She described an occurrence in which her daughter and son were involved in a physical altercation over a video game while husband laughed and egged her son on to hit his sister. She described one occasion on which husband pulled her hair. She complained also that he insisted to her that she should want to kiss him and spend time with him. She believed that he also tried to control her weight, telling her she was too thin and she should eat. (N.7) She presented no details as to the use of pornography. Husband credibly denied her allegations, asserting that she spoke for hours on the phone with her family, that the altercation between the children was a sibling fight over a toy, that the hair-pulling episode was during a tender moment, and was really only a playful tug. His objection was her being on the telephone and ignoring him when he arrived home from work. (N.T. 11-12) He also told the court that she was bipolar, which she corroborated, and that her spending of marital funds was out of control. (N.T. 20, 30) He does not want a divorce or separation. (N.T. 13-14)

The parties have two children, a fifteen year old daughter and a seventeen year old son. The son resides with Husband and the daughter resides with wife.

Husband has worked at K & W Tire Company for fifteen years. He makes a weekly gross of $692.31 and has medical coverage for himself at a cost of $14.84 per week. His net is $2,500 per month, and his current expenses exceed that figure. The children have medical coverage through CHIP. (N.T. 20)

Wife works part-time at a school as a library assistant

and a cafeteria aide. When she works at the former job she makes $10.20 per hour; the latter pays her $8.89 an hour. She works 20 hours a week. (N.T. 18). She worked previously only when first married as a receptionist/ secretary at between $10 and $11 per hour. (N.T. 19) She has workers with disability health insurance. (N.T. 20) She has a problem with her feet. Foot surgery was performed in February of 2013 and a second surgery will be performed in June. She cannot work for six weeks after surgery. (N.T. 15-16)

The parties have three credit cards with a cumulative balance of $15,000, almost all of which was charged by wife. (N.T. 22) Husband is paying off the debt, with the help of a credit counseling agency. (N.T. 23) The parties live in a house owned by husband's parents and pay $420 a month in rent. The parties' church has been helping them with their utilities. Additionally, because of their marital difficulties and at the specific request of wife, husband voluntarily enrolled in a thirteen week counseling program in Philadelphia, which costs him $100 per week in tuition and travel. (N.T. 13, 26) Wife now denies value in the program. (N.T. 13)

The court's order of April 10, 2013 sustained husband's appeal and denied wife's entitlement to spousal support. It entered a four tiered order: a) Effective as of the filing date, husband was to pay $237.94 in monthly support, based on a net monthly income to husband of $2538.89 net and a net monthly income partially imputed to wife in the amount of $1426.14; b) effective April 3, 2013, husband was to pay $245.98 per month in child support and alimony pendente lite, based on a net monthly

income to husband of $2538.89 and a net monthly income partially imputed to wife in the amount of $1426.14; c) effective June 6, 2013, husband was to pay $1138.67 in child support and alimony pendente lite. This was based on Husband's monthly net income of $2,538.89, and zero income for plaintiff for seven weeks after her foot surgery; d) effective August 1, 2013, husband was to pay $245.98 in child support and alimony pendente lite for plaintiff. Order based on plaintiff's imputed earnings of $1426.14 per month (400 per week gross) and husband's earnings of $2538.89 monthly.

Wife's imputed earnings were calculated based on $10.00 per hour, slightly less than her current hourly salary as a library aide extrapolated over a 40 hour work week.

## ISSUES

1. Whether wife is entitled to spousal support when she described why she left the marital home in both generalities and in three specific complaints that the court found to be ambiguous and non-credible.

2. Whether additional income could be imputed to wife when she worked a twenty hour week as a school library and cafeteria aide, was a high school graduate, had taken college equivalency classes, played piano proficiently and whose husband's income and her part-time income could not cover the expenses of two residences, in each of which a child also resided

## ANALYSIS

Plaintiff presented seven issues for appeal in her 1925(B) statement, but basically she has only two specific

complaints. The first is that the court erred in denying her entitlement to spousal support and the second is that the court erred in imputing income to her. Her other issues, which deal with deviation from the guidelines and miscalculation of the support amounts, actually boil down to the court's use of the imputed income figure.

The preliminary issue is whether she had adequate legal reason for voluntarily leaving the marital home without her husband's consent. A wife, seeking support following a nonconsensual voluntary move from the marital home has the burden of proving that her husband's conduct justified the leaving. *McKolanis v. McKolanis*, 644 A.2d 1256, 1257 (Pa. Super. 1994) If she cannot provide an adequate justification, her right to support is defeated. *Myers v. Myers*, 592 A.2d 339, 341 (Pa. Super. 1991) The phrase "adequate cause for leaving" is not subject to exact definition, but must be considered on the facts of each case. (*McKolanis* at 1258) Also, the reasons for leaving must be specific and not expressed in generalities. *Van Wagenen v. Van Wagenen*, 74 A.2d 740 (Pa. Super. 1950)

After review of the testimony of the parties and the relevant law, the court concludes that wife did not have adequate legal reason for leaving the marital residence. certain of wife's complaints about husband's behavior was offered in generalities. She asserted that husband controlled her, telling her that he wants her to kiss him and spend time with him, calls her names and makes her feel stupid. More detail would be needed for the court to reasonably determine whether wife was justifiably troubled by these behaviors. Other of her testimony was presented in more detail, such as her description of

an altercation between her son and daughter wrestling over physical custody of a video game. She said that her husband was laughing and urging the son on to physically hurt his sister. Husband, during his testimony, described the situation as one of those things that take place between siblings squabbling over a possession. Even as wife described it, that is precisely the characterization the court would place upon it. Wife also contended that her husband controlled her and wouldn't let her use the telephone to speak with her family. But she also said that his method of control was distraction in order to maintain her attention on him. Husband reported that she that she talked to her family for hours on the telephone. The court rejects this scenario as showing abusive behavior, but rather sees it as a situation in which husband comes home from a full day of work and finds his wife on the telephone and non-responsive to him and remarks upon his displeasure. Wife also reported an incident in which husband pulled her hair. Husband reported the incident as a playful tug made while they were lying together on the sofa. The court finds wife's interpretation of such events to be non-credible, presented with a gloss of over-dramatization and finds husbands testimony to be more credible than wife's. Additionally, husband voluntarily became involved in a series of therapy sessions at a substantial expense of time and money. He went to the course at the specific urging of wife. Wife complained that the course was insufficient, although she had not informed husband of her conclusion and let him continue despite her negative attitude. Husband wants to maintain the marriage; wife is unhappy and wants to leave. This may be a marriage on the road to

divorce, but the court does not find that Wife's testimony proves that husband's behavior is at a level which made wife's existence unbearable and reasonably triggered her leaving. Wife is not entitled to spousal support.[1]

Wife complains further that the court erred in deviating from the guidelines in all of its calculations at the various tiers. But the court did not deviate. The real issue is not whether the court erred in calculating wife's support obligation; the issue is whether the court erred in imputing an earning capacity and then calculating the support obligation by use of the guidelines using that imputed earning capacity.

An imputed income is permitted under Pa. R.C.P. 1910.16-2(d)(4), which says:

(4) *Earning Capacity.* If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

---

1. Wife has requested and received alimony pendente lite, for which defendant has no entitlement defense. The disadvantage to plaintiff is that APL is subject to income tax and is counted as part of her income, while spousal support is not.

Wife is holding down jobs as a cafeteria aide and a library aide at a local school, at hourly rates of $8.89 and $10.20 respectively. She baby-sits during the summer for $125 a week, when the other jobs are unavailable. Wife has a high school diploma and has taken college equivalency courses. When she worked full-time prior to the birth of her children, she was a secretary/receptionist. She also has the ability to play the piano with some proficiency, since she has on occasion played for the Lancaster conservatory of music. She suffers from bi-polar syndrome, but presented no medical evidence on if or how that might affect her ability to work on a regular basis.

The court finds that wife has voluntarily and willfully refused to work at appropriate employment. While her part-time schedule may have been satisfactory to the parties while the family income was used to support one household, now there are two households, each with a child. Husband's income did not magically expand to support the expenses of two households upon separation, nor was there any allegation by wife that she cannot hold a full-time job. In fact, her testimony indicates that she believes herself to be capable of full-time work, since she requested additional hours from the school. She was told time would not be available until the next year, but she looked no further for additional work. There are no small children at home who demand her attention all day. Wife has testified to no limits on her ability to work full-time, except for her foot surgery, which the court considered in its order. In short, the only thing standing in wife's way to extra money is her own negative decision. Since wife has expended no effort to obtain a full-time job, her

decision to do so can be termed a willful failure. Thus the court is permitted to impute to her the income that a full-time position would provide and finds that plaintiff has an earning capacity of $1426.14 per month.

The court used that figure in calculating husband's support obligation, making such modifications as called for by the facts of the split custody and wife's surgeries. The final calculations are appropriate in relation to the guidelines, and there is no calculation error or deviation.

## CONCLUSION

Based on the above, the court finds the order of April 10, 2013 to be accurate and appropriate in all of its aspects and maintains it as the current order of court.