J-A35027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JANIE HERVERT, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| FRANK HERVERT, | |
| Appellee | No. 293 WDA 2014 |

Appeal from the Order entered January 30, 2014,
in the Court of Common Pleas of Allegheny County,
Family Court, at No(s): FD01-8871-004

BEFORE:  BENDER, P.J.E., BOWES, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED JANUARY 05, 2015**

Janie Hervert ("Wife") appeals from the trial court's order granting in part and denying in part her exceptions to the trial court's prior order modifying and reducing Wife's alimony payment from Frank Hervert ("Husband").  We affirm.

The trial court summarized the pertinent facts and procedural history as follows:

> Divorce litigation in this case began in 2001 on the issues of support and equitable distribution.  In late 2003, a two-day trial before the Honorable Lawrence W. Kaplan was held to resolve the economic claims.  Judge Kaplan entered an order on April 28, 2004, which provided among other things a permanent alimony award in favor of [Wife] in the amount of $2,500 per month.  The award, though permanent, was nevertheless modifiable upon a showing of a substantial and continuing change of circumstances. ***See*** Order of Court, dated April 28, 2004.  In May 2012, [Husband], at the age of 64, was laid off.  He testified at trial that he was provided with one year of severance pay,

which ended in May 2013. At that time, since he was almost 66 years old, he decided to retire. In May 2013, [Husband] petitioned the Court to modify the alimony award. This Court set the matter in front of a hearing officer, which ultimately culminated in a one-half day trial on October 25, 2013. [The trial court temporarily reduced the alimony award to $1,250.00 per month pending the hearing before the hearing officer. *See* Order of Court, dated May 31, 2013.] At the trial, the Hearing Officer reduced the permanent alimony award to $650 per month and set the payments to cease in April 2016 (or sooner if [Wife] retires, receives social security or social security disability, remarries or cohabitates, or if [Husband] dies). *See* Hearing Officer's Recommendation and Summary, dated November 1, 2013.

[Wife] filed exceptions. . . . At the exceptions argument, this Court agreed that by the terms of the original order, the [alimony] award, although modifiable, was nevertheless intended to be permanent. [Wife] correctly emphasized the permanency of Judge Kaplan's award. Thus, this Court held that the now-reduced alimony of $650 [per month] shall remain in effect, absent another substantial and continuing change in circumstances. *See* Order of Court, dated January 30, 2014. The Court granted [Wife's] only properly filed exception.

Trial Court Opinion, 4/21/14 (footnote omitted). This timely appeal followed. Both Wife and the trial court have complied with Pa.R.A.P. 1925.

Wife raises the following issues:

I. The trial court erred in finding that Husband provided a substantial change of circumstances that warranted a reduction in alimony payments.

II. Husband did not meet his burden of providing substantial change of circumstances given that he was the moving party.

III. The trial court erred in reducing Wife's budget.

- 2 -

IV. The trial court erred in not providing Wife alimony in an amount which met the trial court's calculation of her reasonable budget.

**See** Wife's Brief at i.[1]

The pertinent statutory authority for modifying an alimony award is as follows:

> **(e) Modification and termination.—**An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made. Any further order shall apply only to payments accruing subsequent to the petition for the requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony.

23 Pa.C.S.A. § 3701(e).

Our standard of review is well settled:

> The role of an appellate court in reviewing alimony orders is limited; we review only to determine whether there has been an error of law or an abuse of discretion by the trial court. Absent an abuse of discretion or insufficient evidence to sustain the support order, this Court will not interfere with the broad discretion afforded the trial court. An abuse of discretion is more than an error of judgment; it occurs if the judgment is manifestly unreasonable or is the result of prejudice, bias or ill-will.

_____

[1] Wife's brief does not contain a separate statement of questions involved. **See** Pa.R.A.P. 2116(a). We have listed Wife's issues from her table of contents, and have reordered them for ease of discussion.

***Willoughby v. Willoughby***, 862 A.2d 654, 656 (Pa. Super. 2004) (citations omitted). Moreover, a hearing officer's report and recommendation, "although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the [hearing officer] has the opportunity to observe and assess the behavior and demeanor of the parties." ***Moran v. Moran***, 839 A.2d 1091, 1095 (Pa. Super. 2003) (citation omitted).

In her first two issues, Wife asserts that the trial court erred in modifying her alimony amount because Husband, as the moving party, failed to meet his burden of establishing a substantial and continuing change of circumstances. We disagree.

This Court has long held:

> Pennsylvania case law clearly establishes that retirement can serve as the basis for the changed circumstances of a substantial and continuing nature necessary to modify an alimony award. In [***Lee v. Lee***, 507 A.2d 862 (Pa. Super. 1986)], we found that the [trial] court erred when it refused to consider the changed financial circumstances of the [husband] brought about by forced, early retirement. [***Id.***] at 865. In [***Mazzei v. Mazzei***, 480 A.2d 1111 (Pa. Super. 1984)], we alluded to the fact that voluntary retirement can also constitute changed circumstances of a substantial and continuing nature. [***Id.*** at 1117 n.6].

***McFadden v. McFadden***, 563 A.2d 180, 183 (Pa. Super. 1989). Thus, in ***McFadden***, we held that the trial court "abused its discretion in refusing to consider the changed financial circumstances of [the husband] brought about by [his] voluntary retirement." ***Id.*** (footnote omitted).

- 4 -

In rejecting Wife's claim, the trial court reasoned:

> In the instant case, [Husband's] company apparently terminated his position in May, 2012. Though there might be a bit more to this "termination" – that is, whether he was asked to retire – the following is uncontested. [Husband] worked for [the] same organization for 45 years. The company gave [Husband] a severance package so long as he did not work for a competitor and forwent any potential legal claims as a result of the termination. The severance amounted to a year's worth of base salary, which expired in June 2013. [Husband] also has health issues, including coronary heart disease. He also had two stents put in his heart, neck surgery, cataract surgery[,] and he has had kidney stones. At the time of the hearing, [Husband] was 66. For those reasons, when his severance expired, [Husband] decided to retire instead of looking for a new job.
>
> [Wife] does not argue that [Husband's] retirement was questionable, but rather that his financial circumstance has not changed and thus no modification is warranted. But the change in [Husband's] financial circumstance is as obvious as it is clear. At the time of the equitable distribution and the original alimony award, [Husband's] income was $137,000 per year. The Hearing Officer concluded that in retirement, [Husband] will receive two sources of income: social security and a mandatory distribution that he must take each year from the individual retirement account that [Husband] inherited from his late mother. Those sources of income are expected to total $33,577 per year. [Husband's] monthly social security benefit is $2,477.20 less $104.90 for medical insurance premiums. [Husband] testified that he did not know what he planned on withdrawing from his retirement account, so the Hearing Officer properly attributed him a $3,000 per month withdrawal in light of his life expectancy of 17 years. In any event, [Husband] will realize roughly $100,000 less per year than when the original alimony order was created.
>
> As to why this is not a change in circumstances, [Wife] essentially argues that [Husband] has enough retirement savings to support himself and her. [Husband's] holdings

are comprised of one Ameriprise account valued at $941,000. This account includes $362,000 awarded to [Husband] in equitable distribution. The difference is comprised of post-separation earnings and his inheritance, now figured to be $96,085. [Wife] argues that since [Husband] did not know exactly how much he was planning on withdrawing from his retirement nor the rate of return on his holdings, then [Husband] has not met his burden of proof showing a substantial and continuing change of circumstances.

This argument is anemic. As to the issue of rate of return, no explicit testimony was offered nor did the Hearing Officer create a formula. There was some talk amongst the attorneys during [Wife's] motion for nonsuit that a hypothetical 4% rate could be used. Still, this rate would not make up for [Husband's] lack of income now that he is retired. In [Wife's] best case scenario, where there is a 6% rate of return on *all* of [Husband's] holdings and assets, [Husband's] post-retirement income would be $88,000 per year, which is still $50,000 less than [Husband's] income at the time of the [original alimony] award. But even so, [Husband] properly met his burden of proof and the Hearing Officer properly denied [Wife's] motion for nonsuit.

Trial Court Opinion, 4/21/14, at 4-6 (citations omitted). Our review of the record supports the trial court's conclusion that Husband met his burden of proof.

Wife's claims to the contrary are unavailing. She asserts Husband failed "to meet his burden of proving how, if at all, his income stream would be affected" by his retirement. Wife's Brief at 10. Wife further alleges that, "[i]n reality, [Husband] was merely simply substituting (1) source of income for another presumably because he could afford to." Wife's Brief at 10. According to Wife, "[Husband] cannot rest on the mere happening of an

- 6 -

event like retirement when he is sitting on a million dollars and keeping it from the court's sight." *Id*. at 11.

As recognized by the trial court, *supra*, Wife does not contest Husband's decision to retire as a basis for modification of alimony, but rather contests the court's decision to adopt the Hearing Officer's reduction in the alimony amount. The above explanation by the trial court refutes Wife's assertions. Initially, we cannot disturb the credibility determinations. *Moran*, *supra*. Moreover, Wife takes Husband's testimony out of context when she asserts that Husband testified "he would not be withdrawing from his retirement accounts [sic], but instead he wanted to leave it to his heirs or his new wife, whose retirement he also shares." Wife's Brief at 9. Husband actually testified: "But when I put that money in [Ameriprise], my whole reason for doing that is to make sure that I have enough money to live for the rest of my life and hopefully money left over to will to my children when I die. I don't want to use it all up, only what I have to." N.T., 10/25/13, at 56. Clearly Husband's prior $2,500.00 monthly alimony obligation to Wife would contribute to depleting Husband's retirement account.

Finally, we reject Wife's assertion that, even considering the calculations made by the hearing officer and the trial court, "it would let [Husband] die a millionaire while [Wife,] who only holds a job paying $12.50 per hour that provides no retirement benefit at all, will not be able to meet her reasonable needs after a 31-year marriage." Wife's Brief at 9. This

contention ignores the fact that in equitable distribution the trial court awarded Wife the marital portion of Husband's pension in an amount close to one-quarter of a million dollars. *See* Trial Court Order, 4/28/04.

Wife's remaining claims involve the trial court's treatment of her monthly budget when calculating her reasonable needs. Wife first asserts that the hearing officer and trial court erred in reducing and or eliminating certain listed expenses from her monthly budget. According to Wife, these expenses "should not have been removed from the budget without explanation and certainly without insulting references, which make no sense and have no place in any court order." Wife's Brief at 14. Wife next claims that the trial court erred in not awarding her alimony in an amount that would meet her "reasonable budget," as determined by the Hearing Officer and adopted by the trial court. *Id*. at 7. According to Wife:

> The testimony at the [alimony] modification hearing did not stray from historical facts and perspectives of the parties since Equitable Distribution. [Wife] due to her age, health, station, vocation skills, and employability, was not employed for a number of years after the divorce. Also, in the past several years, she had been working as a receptionist for an insurance agent with earnings of approximately $12.50 per hour according to the Trial Court.

*Id*. at 8. Wife further asserts that the trial court erred "in looking to [Wife's] marital Equitable Distribution funds to consider her alimony needs." *Id.* (footnote omitted).

The trial court explained its reductions in Wife's monthly expenses, and supported its reduced alimony award as follows:

> The parties' divorce was final in 2005. Therefore, it would be inappropriate for this Court to somehow equate Wife's current reasonable needs with the needs of a spouse litigating a divorce action. This Court is not in a position[,as in equitable distribution,] where it must ensure the equities of a newly dependent spouse searching for means to defend herself in divorce court.
>
> ***
>
> After hearing testimony, the Court came to a rather large departure from what [Wife] felt were her reasonable needs. . . . At trial the Hearing Officer properly found that [Wife] was living far beyond her means, and that her budget expenses were "over-inflated" and more of a "wish-list." By way of example, the Hearing Officer noted in the summary that [Wife's] decision to reside in the large marital house and her shopping habits were unreasonable. Consequently, the Hearing Officer reduced [Wife's] proposed budget.
>
> This Court opines that the Hearing Officer acted well within her discretion and reiterates the aforementioned consideration this Court must give to the credibility findings of masters and hearing officers. To be sure, in finding that [Wife's] needs were unreasonable, the Hearing Officer necessarily had to find that [Wife's] testimony was not credible, at least in part. There is ample evidence to support this conclusion. The relevant testimony can be found between pages 79 and 103 of the [10/25/13] transcript. [Wife's] proposed budget was admitted as Exhibit D.
>
> [Wife] stated that she spends $600 per month on food, household products and sundries. Naturally this expense is for [Wife] only, as the alimony award would have been terminated if she cohabitated. Wife spends $250 per month on clothes, because she works the front desk at work and must be presentable. For that same reason, she spends $175 per month at the beauty salon.

[Wife] testified that she bought a 2002 Volvo from her son. At first she testified that she was making car payments to him. What [Wife] meant to say, apparently, was that she planned on paying her son for the car. Son apparently "sold" [Wife] the car five years ago, but [she] has never had to make payments until now. The Hearing Officer nevertheless allotted $200 per month for car payments even though she noted that it might not be a current expense. It is reasonable to allot money for the maybe-phantom car payment, because [Wife] also testified that the car has a lot of maintenance expenses. [Wife] testified that she spends on average $190 per month on repairs. She spends $146.50 for car insurance. [Wife] claims that she spends $240 per month on gas even though she works full time and is only a ten minute's drive from her office. [Wife's] proposed budget includes the $100 per month that she allegedly sets aside for replacing her current car.

[Wife] allots $50 a month for household help, but she does not have a cleaning person. The $600 per year expense accounts for her neighbor raking leaves. But it does not account for tractor repair or lawn care. Home repairs are also a trouble area. [Wife] anticipates that she will need $250 per month for home maintenance. Two furnaces need to be replaced. The roof leaks, the pool needs to be lined and there is a tree that needs to be cut down. There is also trash pick-up. [Wife] said that she does not want to sell the house for fear that it would exacerbate her depression. The house's outstanding mortgage is $60,000 with ten years left. The 2013 Allegheny County assessment listed the house's fair market value to be $234,700.

There are still other questionable expenses. [Wife] budgeted $120 per month for general entertainment and $30 for magazines. [Wife] spends on average $15 a month for dry cleaning. Wife spends $150 per month on gifts; $250 per month is apportioned for vacations. Cross-examination revealed that [Wife] routinely spends two to three thousand dollars on gifts and donations per year. [Wife] anticipates that she will spend $15 per month replenishing her bank checks. And although the budget, reasonable or unreasonable, is very detailed, [Wife]

- 10 -

includes a catchall "other" category in the amount of $743.66 per month.

The Hearing Officer reduced [Wife's] budget to [$3,696.90] per month and listed specific itemizations. While the Court agreed that [Wife's] budget was unreasonable, indefinite alimony is still required and so this Court departed from the Hearing Officer's recommendation. [Wife] is 63 years old. [Wife] is being treated for depression. She also has physical ailments. She suffers from post-polio syndrome, which brings on bouts of extreme fatigue. Steps and balance pose certain problems.

On the other hand, the Hearing Officer correctly noted that [Wife] has done nothing to increase her job skills since the parties separated in 2000. One year, [Wife] testified that she did not work at all because she was too depressed. It is telling that [Wife's] proposed budget ($6,300 per month) is only two-hundred dollars below what she submitted at the original alimony hearing. Judge Kaplan explicitly found the amount to be unreasonable as well.

Lastly, [Wife] alleges that the Court erred in finding that she can make up for any shortfall in her budget by withdrawing from her IRA. Indeed, [Wife] has already done this. [Wife] testified that her IRA account contained $240,826.52 at the time of trial, of which $40,000 was liquidity. In other words, even if [Wife] found herself in need of an emergency fund, she would still have access to a fair amount of her IRA penalty-free. Because this Court disagreed with the Hearing Officer's recommendation that the alimony award should terminate in two years, this Court does not feel compelled to adopt wholesale the Hearing Officer's rationale that [Wife] can dip into her IRA to make up any shortfall.

Put another way, it is [Wife's] stance that the Hearing Officer supposedly felt that [her] budgetary needs could be met by draining her retirement account. This Court does not agree with [Wife's] read on the [Hearing Officer's] summary and recommendation[.] . . . Because this Court determined that [Wife's] award should continue indefinitely, [Wife's] position that the Court believes the

> IRA is an appropriate budgetary remedy loses its bite. Now that [Wife's alimony] award will continue [indefinitely], the likelihood that [Wife] will need to utilize an emergency fund will continue to be low.

Trial Court Opinion, 4/21/14, at 6-10 (citations omitted).

After careful review, we conclude that the record supports the trial court's conclusions. In support of her argument to the contrary, Wife argues "law of the case" and refers to certain statements made in 2004 by Judge Kaplan when equitably distributing the marital estate. *See* Wife's Brief at 7-10. As acknowledged by the trial court, *supra*, Judge Kaplan's statements were made ten years earlier in the parties' divorce action. Our review of Judge Kaplan's opinion supporting his equitable distribution order reflects that he "simply did not find Wife's testimony credible as to her reasonable needs," because "[t]hese kind of budgetary excess are simply inconsistent with the credible testimony of the parties' lifestyle established during the marriage and/or are inconsistent with the net monthly incomes generated by these parties." Trial Court Opinion, 11/4/04, at 6.

Finally, our review of the record supports Husband's averment that the reduced alimony amount calculated by the Hearing Officer, and adopted in part by the trial court, results in a scenario where each party will have to "withdraw a similar percentage form his/her retirement to meet each party's . . . reasonable needs." Husband's Brief at 8. Given these circumstances, we conclude that the trial court's reduction of the monthly alimony award to

Wife constitutes neither an error of law nor an abuse of discretion. We therefore affirm the trial court's order.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/5/2015